GERARDO LUIS BONAFONT SOLÍS e IRIS M. COLÓN PÉREZ, ETC., demandantes y peticionarios, *v.* AMERICAN EAGLE h/n/c EXECUTIVE AIRLINE, INC., HYTO INSURANCE y GAVIOTA, INC., demandados y recurridos.

*Número:* CC-95-125     *Resuelto:* 5 de junio de 1997

*Paul Vilaró Nelms,* abogado de la parte peticionaria; *Luis D. Ortiz Abreu* y *Artemio Rivera Rivera,* de *Goldman, Antonetti & Córdova,* abogados de la parte recurrida.

376

— o —

Opinión concurrente emitida por el Juez Asociado Señor Negrón García.

Concurrimos con la sentencia. Estimamos correctos los dictámenes del ilustrado Tribunal de Primera Instancia, Sala Superior de Humacao (Hon. Carlos Soler Aquino, Juez) y del reputado Tribunal de Circuito de Apelaciones (Hons. Amadeo Murga, Pesante Martínez y Rivera Pérez, Jueces). Ambos foros actuaron con recta juridicidad al considerar a Gerardo Luis Bonafont Solís como el *único demandante* con derecho a estar presente en una deposición, con exclusión de sus familiares, cuyas causas de acción habían sido desestimadas por la Corte de Distrito federal para el Distrito de Puerto Rico.

En el caso de autos aplica la *defensa de cosa juzgada* frente a las pretendidas reclamaciones sobre los daños causados a parientes por la alegada difamación y despido injustificado de un ser querido.(¹) Dicha defensa procedía en virtud del dictamen de 26 de octubre de 1993 de la Corte de Distrito Federal para el Distrito de Puerto Rico, que fue emitido *con jurisdicción sobre la materia.*

Ese dictamen del foro federal se convirtió en *final y firme,* ya que las mociones de reconsideración de Executive Airline, Inc. y Bonafont Solís fueron presentadas *tardíamente,* el 15 de noviembre de 1993 y el 27 de diciembre de 1993, respectivamente. La Regla 59(e) de Procedimiento Civil federal, 28 U.S.C.,(²) dispone que tales mociones de reconsideración se tienen que presentar dentro del término de diez (10) días. Más aún, por sus contenidos, no podían ser evaluadas como mociones de relevo de sentencia.(³) La determinación judicial nunca fue revisada en alzada.

---

(¹) De la demanda presentada el 5 de noviembre de 1991 en el Tribunal Superior, Sala de Humacao (Alegación Núm. 25), y la demanda enmendada en el tribunal federal aceptada el 17 de febrero de 1993 (Alegación Núm. 29), surge diáfanamente que los padres de Bonafont Solís *sólo reclamaron los daños causados por el despido injustificado. Éstos nunca promovieron una causa de acción por la alegada difamación.*

(²) A la fecha de los hechos, la Regla 59(e) de Procedimiento Civil federal disponía: *"Motion to Alter or Amend a Judgment.* A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." 28 U.S.C.

Posteriormente, en 1995, fue enmendada así: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

(³) *"Rule 60. Relief from Judgment or Order.*

"(a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or

En consecuencia, en esa etapa el foro federal no tenía autoridad para modificar su dictamen y reconocer una causa de acción basada en nuestra decisión *posterior* en *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994), que por sus términos fue con carácter prospectivo.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton.

Por entender que en virtud de la sentencia emitida por el Tribunal de Distrito Federal para el Distrito de Puerto Rico (en adelante la Corte de Distrito federal), las reclamaciones de los parientes de Bonafont. Solís constituyen cosa

---

discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28 U.S.C. 87 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Regla 60 de Procedimiento Civil federal, 28 U.S.C.

Las mociones, en idioma inglés denominadas *Motion for Reconsideration and to Alter or Amend Judgment*, no tuvieron otro alcance que el de una moción de reconsideración. Éstas no expusieron las alegaciones necesarias para solicitar un relevo de sentencia ni pusieron al tribunal federal en posición de determinar que existía una razón que justificara un relevo bajo la Regla 60(b)(6), 28 U.S.C. En ningún momento posterior a *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994), las partes informaron esa decisión al foro federal y éste no la consideró motu proprio.

Más aún, numerosos tribunales han concluido que el mero cambio en la ley o la doctrina como interpretada por un tribunal no constituye una situación en la cual pueda solicitarse relevo de sentencia bajo la Regla 60(b)(6), 28 U.S.C. *U.S. v. Real Property*, 164 F.R.D. 496, 500 (1995); *De Weerth v. Baldinger*, 38 F.3d 1266, 1273 (2do Cir. 1994); *Dowell v. State Farm Fire and Cas. Auto Ins. Co.*, 993 F.2d 46, 47–48 (4to Cir. 1993); *Schmidt v. Schubert*, 79 F.R.D. 128, 129 (1978); *Collins v. City of Wichita, Kansas*, 254 F.2d 837, 839 (10mo Cir. 1958); *United States v. Polites*, 24 F.R.D. 401, 404 (1958).

juzgada, estamos conformes con la sentencia emitida por este Tribunal.

## I

En el caso de autos la demanda original presentada en el entonces Tribunal Superior de Puerto Rico por Bonafont Solís y sus familiares sólo contenía unas reclamaciones bajo la ley local. La demandada American Eagle solicitó un traslado al foro federal al alegar que la *National Railway Labor Act* (en adelante RLA), 45 U.S.C. secs. 151–188, ocupaba el campo. Los demandantes no se opusieron a esta petición. La Corte de Distrito federal autorizó el traslado aunque de la demanda original no surgía una causa de acción federal. Sin embargo, posterior al traslado, los demandantes enmendaron su demanda e incluyeron una reclamación contra la *Transport Workers Union* (en adelante Union) por representación indebida bajo la RLA. De esta manera incluyeron una reclamación federal para la cual la Corte de Distrito federal sí tenía jurisdicción. Dicha corte, haciendo uso de su jurisdicción suplementaria discrecional,[1] adjudicó una causa de acción bajo el derecho puertorriqueño: la de los parientes de Bonafont. Por esta razón, el efecto de dicho dictamen será evaluado acorde con nuestra propia doctrina de cosa juzgada.

## II

La doctrina de cosa juzgada responde al interés del Estado en que se le ponga fin a los litigios para que así no se

---

[1] La jurisdicción suplementaria discrecional le confiere jurisdicción a un tribunal federal sobre aquellas causas de acción estatales que estén íntimamente relacionadas con alguna reclamación o causa de acción, sobre la cual dicho tribunal tenga jurisdicción federal original, siempre y cuando las causas de acción federales y estatales surjan del mismo núcleo común de hechos operacionales. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

eternicen las cuestiones judiciales, y a la deseabilidad de que no se someta en dos (2) ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732 (1978).

Los requisitos para aplicar la doctrina de cosa juzgada son que: (1) haya una primera sentencia válida, final y firme; (2) las partes, en el primer litigio, sean las mismas en el segundo; (3) en ambos pleitos se trate del mismo objeto o asunto; (4) en el primer pleito se haya pedido igual remedio que el que se pida en el segundo, y (5) las partes litiguen en la misma calidad en ambos pleitos. Art. 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343.

En el caso de autos, al evaluar el primer requisito de la doctrina de cosa juzgada —que la sentencia dictada en el primer pleito sea válida— debemos revisar si la Corte de Distrito federal tenía jurisdicción sobre la materia en el momento cuando desestimaron las acciones de los parientes de Bonafont. Véase *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991). Para esto es necesario determinar si el traslado al foro federal fue realizado acorde con el Derecho.

Una acción civil presentada en un tribunal estatal puede ser trasladada al foro federal, siempre y cuando la Corte de Distrito federal tenga jurisdicción original sobre el caso. 28 U.S.C. sec. 1441(a). Para determinar si la Corte de Distrito federal tiene jurisdicción sobre la materia, ésta tiene que revisar la demanda original tal cual redactada al momento de solicitarse el traslado. 14A *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d* 213 (1985).

Sin embargo, en el caso *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996), el Tribunal Supremo federal resolvió que aunque al momento de ordenarse el traslado la Corte de Distrito federal no tuviera jurisdicción sobre la materia, si al momento de dictar sentencia sí tenía jurisdicción, dicho dictamen sería válido. En *Caterpillar*, Lewis presentó una

demanda ante un tribunal estatal. La parte demandada solicitó un traslado a la Corte de Distrito federal, el cual fue objetado por Lewis, al alegar que no existía absoluta diversidad de ciudadanía entre las partes. La Corte de Distrito federal denegó la petición de devolver el caso al tribunal estatal (*remand*). Cuando dictó sentencia a favor de los demandados, sí existía diversidad absoluta entre las partes. Instada la apelación ante el Tribunal de Circuito de Apelaciones federal, éste revocó la sentencia al concluir que ante la ausencia de diversidad absoluta al momento del traslado, la Corte de Distrito federal no tenía jurisdicción sobre la materia. El Tribunal Supremo federal revocó al Tribunal de Circuito de Apelaciones. Aunque se trataba de un caso de diversidad de ciudadanía, el Tribunal se expresó en los términos siguientes:

> We hold that a district court's error in failing to remand a case improperly removed *is not fatal* to the ensuing adjudication *if federal jurisdictional requirements* are met at the time judgment is entered. (Énfasis suplido.) *Caterpillar Inc. v. Lewis*, supra, pág. 64.

Para llegar a esta conclusión, el Tribunal citó los casos *American Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951), y *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699 (1972). En el caso *Finn* el tribunal había señalado:

> *There are cases which uphold judgments in the district courts even though there was no right to removal.* In those cases, the federal trial court would have had original jurisdiction of the controversy had it been brought in the federal court in the posture it had at the time of the actual trial of the cause or of the entry of the judgment. (Énfasis suplido y escolio omitido.) *American Fire & Cas. Co. v. Finn*, supra, pág. 16.

Por su parte, citando a *Grubbs v. General Electric Credit Corp.*, supra, y aclarando que se trataba de un caso de traslado sin objeción, el tribunal indicó en *Caterpillar Inc. v. Lewis*, supra, pág. 73:

*Grubbs* instructs that an erroneous removal need not cause the destruction of a final judgment, *if the requirements of federal subject-matter jurisdiction are met at the time the judgment is entered.* (Énfasis suplido.)

A su vez, en *Caterpillar Inc. v. Lewis*, supra, pág. 107, se alude a la sana y adecuada administración de la justicia como uno de los fundamentos para darle validez a la sentencia emitida por el tribunal federal:

To wipe out the adjudication postjudgment, and return to state court a case *now satisfying all federal jurisdictional requirements,* would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice. (Énfasis suplido.)

### III

En el caso ante nos, la Corte de Distrito federal no tenía jurisdicción original sobre la materia al momento de la demandada solicitar el traslado, porque de la demanda original no surgía una causa de acción federal. Sin embargo, al igual que en *Grubbs v. General Electric Credit Corp.*, supra, los demandantes no se opusieron al traslado realizado por la Corte de Distrito federal. Tampoco solicitaron que el caso fuera devuelto al entonces Tribunal Superior de Puerto Rico (*remand*). De hecho, se aprovecharon del traslado para enmendar la demanda y añadir una reclamación federal contra Union. Cuando se dictó la sentencia para desestimar la reclamación de los familiares de Bonafont, la Corte de Distrito federal tenía jurisdicción sobre la materia en virtud de la demanda enmendada. A la luz de lo resuelto en *Caterpillar Inc. v. Lewis*, supra, forzoso es concluir que nos enfrentamos a una sentencia válida. Ésta, a su vez, es final y firme en cuanto no fue apelada por los demandantes al correspondiente Tribunal de Circuito de Apelaciones federal. A su vez, en ningún momento los demandantes

han planteado la invalidez de la sentencia dictada ni que ella fuera dictada sin jurisdicción.

Al aplicar los requisitos de la doctrina de cosa juzgada al caso de autos, encontramos que todos se cumplen: (1) hay una primera sentencia *válida, final y firme* que adjudica los hechos y resuelve una controversia en sus méritos; (2) las partes en el primer litigio son las mismas en el segundo; (3) en ambos pleitos se trata el mismo objeto o asunto; (4) en el primer pleito se pidió igual remedio que el que se pide en el segundo; (5) las partes litigan en la misma calidad en ambos pleitos. Art. 1204 del Código Civil de Puerto Rico, *supra*. Por otra parte, somos del criterio que no estamos ante una situación que amerite hacer una excepción a la aplicación de la doctrina de cosa juzgada. Se trata de una acción privada que no justifica una desviación del efecto normal de *res judicata*.

Ciertamente la Corte de Distrito federal debió haber hecho uso del mecanismo de certificación y haberle remitido a este tribunal la controversia novel sobre la acción por daños y perjuicios de parientes de una persona alegadamente difamada. *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410 (1990); *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172 (1988); *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982). Reconocemos, a su vez, que dicho foro utilizó erróneamente una sentencia nuestra a modo de precedente.[3]

Sin embargo, las partes no apelaron la sentencia de la Corte de Distrito federal, y en ningún momento cuestionaron el traslado a dicho foro ni su falta de jurisdicción. Lo que hicieron fue aprovechar el traslado para incluir una reclamación federal que sí le daba jurisdicción a dicho tribunal. A la luz de la reciente jurisprudencia federal debemos reconocer la finalidad de la sentencia emitida. De lo contrario se afectaría la sana administración de la justicia.

De ninguna manera menoscabamos con este caso las

---

[3] *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977).

funciones de esta Curia. Nuestra decisión no tiene la dimensión que algunos Jueces de este Foro le quieren atribuir. Al contrario, únicamente tiene el efecto de excluir a los parientes de Bonafont de estar presentes en una deposición. Claramente, ellos no eran parte en este caso en virtud de la decisión de la Corte de Distrito federal. Desde este estrado apelativo no nos corresponde rectificar el error cometido por ellos al no apelar la decisión de dicho tribunal.

Concluimos que la doctrina local de cosa juzgada aplica en este caso en cuanto a las causas de acción de los familiares de Bonafont. Por las razones antes expuestas, estamos conformes con la sentencia emitida.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Corrada Del Río, a la cual se une el Juez Asociado Señor Rebollo López.

Se trae ante nuestra consideración una petición de *certiorari* en la cual se nos solicita que revisemos la Resolución emitida el 20 de septiembre de 1995 por el Tribunal de Circuito de Apelaciones, Circuito Regional de Caguas, Humacao y Guayama, mediante la cual se denegó la expedición de un recurso de *certiorari*. En dicho recurso se solicitaba que se dejara sin efecto una resolución dictada por el Tribunal de Primera Instancia que declaraba con lugar una solicitud de orden protectora presentada por la recurrida American Eagle, h/n/c Executive Airlines, Inc. La resolución de instancia tuvo el efecto de negar a los padres y a la esposa del peticionario, Gerardo Luis Bonafont Solís, el derecho a estar presentes en la toma de deposición del señor Bonafont que llevaran a cabo los recurridos.

A continuación exponemos las bases de hecho y derecho que motivan nuestra concurrencia con la sentencia que hoy

emite este Tribunal, la cual confirma el dictamen del Tribunal de Circuito de Apelaciones.

I

El peticionario, Gerardo L. Bonafont, era empleado de American Eagle y fue despedido del puesto que ocupaba como mecánico de aviación como consecuencia del resultado que se obtuvo de una prueba de detección de uso de drogas realizada en su trabajo.

El 5 de noviembre de 1991, el peticionario, su esposa, sus hijos y sus padres instaron una demanda en el Tribunal de Primera Instancia. En la demanda reclamaron por despido injustificado y daños y perjuicios por difamación. Mediante presentación de una notificación de traslado,([1]) la demandada, American Eagle, obtuvo el traslado de la acción a la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico (en adelante la Corte federal) a base de que en el pleito alegadamente existían asuntos de derecho federal que debían ser dilucidados en dicho foro.([2])

El 29 de junio de 1992, los demandantes presentaron ante la Corte federal una demanda enmendada, mediante la cual añadieron como demandada a la *Transport Workers Union of America, AFL-CIO* (en adelante Union) por alegada representación indebida (*unfair representation*).

Union era la organización sindical que representaba al demandante Bonafont. Con esta nueva causa de acción, los demandantes invocaron la existencia de otro asunto federal que debía ser dilucidado por la referida corte. Ante esta

---

([1]) La correspondiente notificación de traslado fue presentada en el anterior Tribunal Superior de Humacao y en el Tribunal de Distrito Federal para el Distrito de Puesto Rico (en adelante la Corte federal) el 19 de diciembre de 1991. Véase 28 U.S.C. sec. 1441.

([2]) La demandada alegó que en el caso en cuestión aplicaban unas disposiciones de arbitraje según el *Railway Labor Act* (en adelante R.L.A.) y que en la alternativa controlaba el campo el *Federal Aviation Act* (en adelante F.A.A.).

demanda enmendada, los demandados presentaron una moción de desestimación.

La Corte federal dictó sentencia el 26 de octubre de 1993, mediante la cual desestimó varias de las reclamaciones existentes en el pleito, incluyendo la causa de acción contra Union, por estar prescrita, y las causas de acción de los familiares de Bonafont, al amparo de su jurisdicción suplementaria discrecional, por carecer éstos de acción legitimada (*standing*). En cuanto a los planteamientos de derecho federal que motivaron el traslado a la Corte federal, dicho foro determinó que el caso no estaba controlado por el *Railway Labor Act* (en adelante R.L.A.) ni por el *Federal Aviation Act* (en adelante F.A.A.), según alegaban los demandados en su solicitud de traslado. De esta manera, la Corte federal dispuso de todas las causas de acción federales existentes en el caso.

Luego de dictada la sentencia, ambas partes en el pleito presentaron mociones de reconsideración, las cuales no fueron acogidas por la Corte federal por haber sido presentadas fuera del término establecido por la Regla 59(e) de Procedimiento Civil federal, 28 U.S.C. Del expediente del caso de autos no se desprende que alguna de las partes hubiera apelado la sentencia a la Corte de Apelaciones de Estados Unidos para el Primer Circuito ni que los demandantes hubieran presentado antes de dictada la sentencia una moción para devolver el caso al foro estatal[3] por entender que el traslado era erróneo o que la Corte federal carecía de jurisdicción sobre la materia.

Así las cosas, las únicas dos (2) causas de acción que subsistieron fueron las de despido injustificado y difamación del peticionario Bonafont, las cuales fueron devueltas por la Corte federal al Tribunal de Primera Instancia.

Ya devuelto el caso al foro estatal, la parte demandada notificó una toma de deposición a Bonafont, a la cual el

---

[3] Este tipo de moción es la que se conoce en la jurisdicción federal como *Motion to Remand.* 28 U.S.C. sec. 1447.

peticionario compareció acompañado de su esposa y los padres de éste. American Eagle se opuso a la comparecencia de los familiares de Bonafont, por lo que el peticionario solicitó una orden protectora al tribunal de instancia para que se les permitiera a éstos estar presentes en la toma de deposición.

En oposición a dicha solicitud, American Eagle sostuvo que la sentencia desestimatoria dictada por la Corte federal era final y firme, por lo que constituía "cosa juzgada" y que por ello los familiares del peticionario ya no eran partes en el pleito. Sobre este particular, el peticionario y sus familiares alegaron que no procedía la defensa de cosa juzgada por aplicarse una de las excepciones a dicha doctrina y que, por lo tanto, sus familiares continuaban siendo parte en el pleito. El Tribunal de Primera Instancia acogió el planteamiento de la parte demandada recurrida, American Eagle, y emitió una resolución mediante la cual declaró con lugar la solicitud de ésta y ordenó a Bonafont a que compareciera a la deposición sin estar acompañado de sus familiares.

Inconformes, Bonafont y sus familiares presentaron una solicitud de *certiorari* ante el Tribunal de Circuito de Apelaciones, en la cual alegaron que la Corte federal había errado al desestimar las causas de acción de los familiares de Bonafont y sustentándose en lo resuelto en *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977), haciendo caso omiso a lo resuelto en *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994). Por lo tanto, sostuvieron que era errónea la resolución del Tribunal de Primera Instancia en la que le reconoció efecto de cosa juzgada a la desestimación, por el foro federal, de la causa de acción de los familiares de Bonafont, bajo el derecho local, de acuerdo con la norma jurisprudencial actual de este Tribunal. El Tribunal de Circuito de Apelaciones declaró no ha lugar la solicitud de *certiorari* de los recurrentes y señaló que habiéndose desestimado las causas de acción de los parientes

de Bonafont, la determinación de la Corte federal era final y firme.

Razonó que por no haberse presentado apelación alguna en la Corte de Apelaciones para el Primer Circuito, el dictamen de la Corte federal, en cuanto a las causas de acción de los familiares de Bonafont, era final y firme, por lo que éstos quedaron excluidos como demandantes en el pleito devuelto al Tribunal de Primera Instancia. En ninguno de los tribunales recurridos se hicieron planteamientos por la parte demandante de falta de jurisdicción sobre la materia de la Corte federal, sin que se cuestionara así la validez de su dictamen por ese fundamento.

## II

· Ante la determinación del Tribunal de Circuito de Apelaciones, Bonafont y sus parientes recurren ante este Tribunal mediante un recurso denominado "Apelación o *Certiorari*", el 8 de noviembre de 1995.

En dicho recurso, los peticionarios señalan que el Tribunal de Circuito de Apelaciones erró al denegar la expedición del recurso de *certiorari* y al determinar que procede la aplicabilidad de la doctrina de cosa juzgada. A su entender, de ser aplicable la doctrina de cosa juzgada, debe reconocerse una excepción a dicha doctrina de forma que no se derroten los fines de la justicia. En síntesis, el planteamiento de los peticionarios es que se justifica aplicar la excepción a nuestra doctrina de cosa juzgada, porque la Corte federal erró al no reconocer, conforme a lo resuelto por este Tribunal en *Soc. de Gananciales v. El Vocero de P.R.*, supra, que los familiares de Bonafont tenían una acción legitimada para reclamar a la demandada daños y perjuicios por sus alegadas expresiones difamatorias contra su pariente.

La controversia que nos plantean los peticionarios es si una decisión de la Corte federal sobre un asunto estatal,

dictada al amparo de su jurisdicción suplementaria discrecional, constituye cosa juzgada en el foro estatal, de intentarse ventilar la misma controversia de nuevo, a la luz de una nueva norma jurisprudencial estatal adoptada luego de la decisión federal.

## III

En cuanto a esta controversia, el Tribunal debe determinar la norma de cosa juzgada que se debe aplicar, si la federal o la estatal, y si realmente corresponde aplicarla a la luz de los hechos particulares de este caso.

En cuanto a la aplicación interjurisdiccional de la doctrina de cosa juzgada, este Tribunal ha establecido que para poder determinar la norma que debe aplicarse es necesario que cada caso sea objeto de un cuidadoso análisis en el que se tomen en consideración varios factores. Los principales factores que deben considerarse son: el tipo de acción de que se trata; si la sentencia previa es de un tribunal de jurisdicción limitada; el fundamento jurisdiccional que tiene dicho tribunal para atender el asunto; si el derecho sustantivo implicado es federal o estatal, y el fundamento utilizado para resolver el caso, a saber, si fue procesal, sustantivo o una combinación de ambos. *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 272 (1989).

Al aplicar los factores mencionados al caso de autos encontramos que: (1) el asunto que resolvió la Corte federal mediante sentencia final y firme —y que ahora se trae ante nuestra consideración— fue *si los parientes de un empleado alegadamente difamado tienen derecho a demandar al patrono alegadamente difamador por los daños alegadamente causados al empleado, a raíz de las expresiones difamatorias en su contra.* Esta reclamación fue declarada no ha lugar en el foro federal a la luz de la norma jurisprudencial que dicho foro estimó que existía en Puerto Rico al

momento de emitirse la resolución y orden;[4] (2) el fundamento jurisdiccional que tuvo la Corte federal para resolver dicha controversia fue *el ejercicio de su jurisdicción suplementaria discrecional*, el cual le confiere jurisdicción sobre *aquellas causas de acción estatales que estén íntimamente relacionadas con una reclamación sobre un asunto federal* de manera que constituyan un mismo caso o controversia bajo el Art. III de la Constitución de Estados Unidos; (3) la sentencia previa es de un tribunal de jurisdicción limitada, entiéndase, la Corte de Distrito federal; (4) el derecho sustantivo implicado es estatal, y (5) el fundamento utilizado por la Corte federal para resolver la controversia en cuestión fue uno sustantivo.

En cuanto al ejercicio de la jurisdicción suplementaria discrecional de un tribunal federal ante una controversia o causa de acción estatal, hemos señalado "que para que [un tribunal federal] pueda asumir jurisdicción es necesario que la causa de acción federal que fundamenta la acción presentada sea suficientemente sustancial como para conferirle jurisdicción sobre la materia". *Díaz Maldonado v. Lacot*, supra, pág. 273. Si el tribunal determina que la reclamación federal es sustancial, puede entonces considerar todas las reclamaciones federales y estatales que surjan *del mismo núcleo común de hechos operacionales* (*common nucleus of operative facts*), si era de esperarse que el demandante las litigara todas en un sólo procedimiento judicial. En circunstancias como la anterior, aun cuando el demandante no solicite del tribunal federal que asuma jurisdicción suplementaria discrecional sobre la reclamación estatal, la sentencia de dicho tribunal podría tener el efecto de cosa juzgada sobre dicha reclamación. *Díaz Maldonado v. Lacot*, supra; *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988).

Por su parte, el Tribunal Supremo de Estados Unidos

---

[4] La resolución y orden de la Corte federal fue dictada el 26 de octubre de 1993.

ha establecido que la jurisdicción suplementaria o accesoria discrecional (*pendent jurisdiction*) le atribuye jurisdicción a un tribunal federal sobre aquellas causas de acción estatales que estén íntimamente relacionadas con alguna causa de acción sobre la cual dicho tribunal tenga jurisdicción federal original, siempre y cuando las causas de acción federales y estatales surjan del mismo núcleo común de hechos operacionales. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). En ese caso, el Tribunal Supremo federal también señaló que cuando un tribunal federal asume jurisdicción suplementaria sobre una causa de acción estatal, aún sin que estén presentes factores de economía judicial, conveniencia y justicia, está obligado a adjudicarla aplicando el derecho sustantivo estatal. *United Mine Workers of America v. Gibbs*, supra, pág. 726.

En el caso ante nos, la Corte federal decidió atender el asunto porque alegadamente aplicaban unas disposiciones sobre arbitraje del R.L.A., 45 U.S.C. secs. 151–158, y en la alternativa, las disposiciones del F.A.A., 49 U.S.C. sec. 1305(a)(1), controlaban el caso. Sin embargo, concluyó en su sentencia que ellas no aplicaban al caso de autos. En síntesis, señaló que dichos estatutos federales no controlaban el campo en cuanto a las reclamaciones de los peticionarios.

Por entender que las causas de acción estatales y las federales estaban íntimamente relacionadas, la Corte federal, a la vez que resolvió las cuestiones federales, dispuso de algunas de las causas de acción estatales mediante el ejercicio de su jurisdicción suplementaria discrecional.

Este Tribunal solamente ha examinado en dos (2) ocasiones la aplicación interjurisdiccional de la doctrina de cosa juzgada. En *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 303 (1987), resolvimos que en situaciones en que se trate de sentencias previas dictadas por tribunales federales que han asumido jurisdicción fundamentados en diversidad de ciudadanía, la doctrina estatal de cosa juzgada es la que

gobierna. Por otra parte, en *Ramos González v. Félix Medina*, supra, este Tribunal señaló que las normas federales de cosa juzgada aplican cuando se trata de un dictamen federal acerca de una cuestión federal.

Como dijéramos anteriormente, la Corte federal dispuso en su opinión de las causas de acción federales y de algunas de las causas de acción estatales. Dichas causas de acción estatales, las de los familiares del peticionario Bonafont, fueron adjudicadas por la Corte federal mediante la aplicación de la decisión de este Tribunal en el caso *Torres Silva v. El Mundo, Inc.*, supra. Por lo tanto, dichas causas de acción fueron resueltas a base del derecho sustantivo estatal y no del federal, por lo que, en este caso, la doctrina estatal de cosa juzgada es la que aplica.

## IV

Es importante señalar que la Corte federal adjudicó las causas de acción de los familiares de Bonafont a base de la decisión de este Tribunal en *Torres Silva v. El Mundo, Inc.*, supra, como único fundamento para su dictamen. La Corte federal no se percató de que ese caso no fue certificado como una opinión, sino como una sentencia.[5]

En *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74, 80 (1987), indicamos que una sentencia sin opinión, cuya publicación no ha sido ordenada por este Tribunal, sino que ha sido publicada porque uno de sus jueces ha certificado una opinión concurrente o disidente, o un voto particular, no tiene valor de precedente.[6] También sostuvimos que tales sentencias tienen el valor persuasivo intrínseco de sus fundamentos y pueden ser citadas con valor persuasivo para guiar una decisión. Sin embargo, no pueden ser cita-

---

[5] Véase Nota del Compilador en *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 417 (1977).

[6] Véanse, además: *Díaz v. Colegio Nuestra Sra. del Pilar*, 123 D.P.R. 765, 777 (1989); *Figueroa Méndez v. Tribunal Superior*, 101 D.P.R. 859, 862 (1974).

das en una decisión como norma de este Tribunal y, mucho menos, para revocar una norma establecida.([7]) Por lo tanto, lo que se dispuso en *Torres Silva v. El Mundo, Inc.*, supra, por tratarse de una sentencia, no constituye un precedente establecido por este Tribunal a base del cual nuestros tribunales o la Corte federal, al interpretar una ley estatal en un caso de jurisdicción suplementaria discrecional, puedan fundar un fallo o una decisión.

Reiteradamente, este Tribunal ha señalado que en casos en los que el Tribunal Supremo de Estados Unidos, cualquier Tribunal de Circuito de Apelaciones de Estados Unidos, Tribunal de Distrito federal o cualquiera de los más altos foros de los distintos estados de la Unión tenga ante su consideración un caso en el cual surjan cuestiones de derecho local, sobre las cuales no existan precedentes claros en la decisiones del Tribunal Supremo de Puerto Rico, pueden solicitar una determinación sobre tales cuestiones a este Tribunal mediante el mecanismo de "certificación". *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410, 415–416 (1990); *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172, 181–182 (1988); *H.E. Vicente Cuesnongle, O.P. v. D.A.C.O.*, 119 D.P.R. 457, 463–475 (1987); *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 784–788 (1982). La "certificación" hubiese sido el medio más directo, rápido y económico que tenía a su disposición la Corte federal en el caso de autos para obtener una *interpretación autorizada* sobre el derecho sustantivo local en cuanto a las reclamaciones de los parientes de Bonafont.

A pesar de existir el aludido mecanismo, la Corte federal optó por hacer su propia interpretación de lo que, a su entender, era el derecho sustantivo prevaleciente en

---

([7]) "El Tribunal resuelve un caso por sentencia cuando el mismo plantea cuestiones reiteradamente resueltas por este Tribunal. ... La sentencia es la forma que utiliza el Tribunal para disponer lo más rápidamente posible del enorme número de casos que tiene que resolver. Sólo intenta resolver la controversia entre las partes." *Figueroa Méndez v. Tribunal Superior*, supra, pág. 862, voto del Juez Asociado Señor Dávila.

Puerto Rico en cuanto a reclamaciones de parientes de una persona difamada por los daños alegadamente causados a éstos a raíz de la expresión difamatoria, aun cuando esta controversia no se había planteado ante este Tribunal antes de la fecha del dictamen de la Corte federal.

En el caso *Torres Silva v. El Mundo, Inc.*, supra, en ningún momento las partes plantearon dicha controversia; por lo tanto, este Tribunal no se expresó al respecto. Lo único que señalamos en dicho caso relacionado con ese particular y que la Corte federal utiliza para resolver el asunto de la reclamación de los parientes de Bonafont, a base de su propia interpretación, es lo siguiente:

> ... No puede considerarse difamatoria la información errónea de que éste era hijo de aquél. Uno de los valores más preciados en nuestra sociedad es que a las personas se le juzga por los hechos propios y no por asociación de parentesco o de otra índole con otras personas.[8]

Según la interpretación realizada por la Corte federal de lo citado anteriormente, la norma en Puerto Rico, en casos de difamación, era que los únicos que podían reclamar daños eran aquellos sobre los cuales se había hecho una expresión difamatoria directamente. Por lo tanto, eran las personas directamente difamadas, y no sus familiares, los únicos que tenían acción legitimada para reclamar daños por dicha expresión difamatoria, a menos que dichos parientes hubiesen sido difamados directamente por el difamador.

No fue hasta la decisión de *Soc. de Gananciales v. El Vocero de P.R.*, supra, que se planteó por primera vez ante este Tribunal la cuestión de si los familiares de una persona difamada tienen derecho a un remedio por daños debido a las expresiones difamatorias llevadas a cabo contra el pariente difamado. En este caso, resolvimos que la doctrina de *of and concerning the plaintiff*, la cual requiere

---

[8] *Torres Silva v. El Mundo, Inc.*, supra, pág. 426.

que en toda acción por difamación el demandante pruebe que las expresiones difamatorias se refieran a su persona de modo particular, no tiene el efecto de impedir a los familiares del difamado acciones por daños y perjuicios debido a las angustias mentales sufridas a causa de una expresión difamatoria, siempre y cuando dicha expresión se refiera específicamente a la persona difamada en particular, de la cual ellos son parientes. Por lo tanto, si la persona que ha sido objeto de las expresiones difamatorias tiene derecho a un remedio por daños —por difamación o daños y angustias mentales— su esposa, hijos u otros que hayan sufrido daños y angustias mentales por dichas expresiones deberán tener una causa de acción por daños y perjuicios.

En vista de lo anterior, podemos concluir que, a base de lo establecido por este Tribunal en *Soc. de Gananciales v. El Vocero de P.R.*, supra, los parientes de Bonafont sí tenían una causa de acción legal para reclamar por los daños que ellos hubieran sufrido a raíz de las expresiones difamatorias hechas contra Bonafont por la demandada recurrida. Sin embargo, dicha causa de acción había sido adjudicada por la Corte federal, al amparo de su jurisdicción suplementaria discrecional, antes de que este Tribunal resolviera *Soc. de Gananciales v. El Vocero de P.R.*, supra, y a base de lo que el foro federal interpretó que era la norma prevaleciente en Puerto Rico.

Sobre este particular, la parte demandada recurrida aduce que por haber sido desestimadas todas las causas de acción de los familiares de Bonafont por la Corte federal mediante una orden final y firme, la doctrina estatal de cosa juzgada impide que éstos sean reconocidos como codemandantes en el pleito pendiente en el Tribunal de Primera Instancia. Por otro lado, se reiteró en su planteamiento de que al no haber sido apelado el dictamen de la Corte federal a la Corte de Apelaciones para el Primer Circuito, la sentencia de dicho tribunal se convirtió en final y firme en cuanto a todas las causas de acción federales y

estatales así adjudicadas. En fin, que por no constituir partes en el caso pendiente, no tienen derecho a estar presentes en la toma de deposición del demandante, aquí peticionario, Bonafont.

Por el contrario, los peticionarios sostienen que los familiares de Bonafont tienen acción legitimada para participar en el pleito, a pesar de que sus respectivas causas de acción contra la parte demandada fueron desestimadas por la Corte federal. En su alegato, la parte peticionaria señala que en este caso no aplica la doctrina de cosa juzgada, sino que lo que se justifica es la aplicación de una de la excepciones a esa doctrina, ya que la Corte federal cometió el error de no reconocer, de acuerdo con lo establecido en *Soc. de Gananciales v. El Vocero de P.R.*, supra, la acción legitimada de los familiares de Bonafont para reclamar daños por las alegadas expresiones difamatorias de la demandada recurrida contra Bonafont.

Sobre este planteamiento de la parte peticionaria, algunos jueces de este Tribunal hoy señalan que éste es incorrecto, por entender que el error craso de la Corte federal no fue haber resuelto el caso a base de una norma legal contraria al precedente controlante, en cuanto a causas de acción estatales sobre reclamaciones por daños a parientes de una persona difamada, sino haberlo resuelto a base de su propia interpretación de unas expresiones de este Tribunal en *Torres Silva v. El Mundo, Inc.*, supra, cuando en realidad, ni en éste ni en ningún otro caso este Tribunal se había confrontado con una controversia semejante. Por lo tanto, aún no existía un precedente preciso cuando dicho foro hizo su dictamen.

Por otro lado, en cuanto a la aplicabilidad de la doctrina de cosa juzgada, algunos Jueces de este Tribunal entienden que existe una razón fundamental por la cual no puede aplicarse la doctrina de cosa juzgada: *que "el Tribunal de Distrito federal carecía de jurisdicción para entender en [el caso de autos]".*

Diferimos de ese criterio en cuanto al anterior planteamiento y, por ende, en cuanto a que no aplica la doctrina de cosa juzgada. Veamos.

## V

El problema, en este caso, en cuanto a la adjudicación de las causas de acción estatales de los parientes de Bonafont, no es simplemente una cuestión jurisdiccional, sino más bien una procesal.

El criterio de los Jueces de este Tribunal que disienten de la sentencia que hoy se emite da al traste con preceptos fundamentales que establecen la independencia jurídica de los estados y la jurisdicción federal. Además, ese criterio pasa por alto la estructura jurídica procesal existente en la jurisdicción federal, la cual nos corresponde hoy reconocer. Finalmente, su disidencia también menoscaba fundamentales principios sobre la deferencia que merecen las decisiones de los tribunales federales en un sistema jurídico como el nuestro.

Para un mejor entendimiento del desacierto jurídico de esa perspectiva, nos corresponde explicar con claridad los hechos procesales característicos de este caso y los principios jurídicos que gobiernan dicho proceso.

Dado que este caso se inició en el anterior Tribunal Superior de Puerto Rico, Sala de Humacao, éste pasó a la consideración de la Corte federal mediante la presentación, por la parte demandada, de una notificación de traslado o *notice of removal.* En dicha notificación, la demandada alegó que aplicaban al caso de autos las disposiciones sobre arbitraje del R.L.A. y, en la alternativa, las disposiciones del F.A.A.; ambos estatutos son federales. A tal solicitud, la parte demandante presentó, dentro del término establecido por las Reglas de Procedimiento Civil federal, una demanda enmendada con el propósito de añadir como demandada a Union, organización sindical encargada de

representar a Bonafont como empleado de Executive Airlines. En la referida demanda, los demandantes alegan que la aludida Unión representó indebidamente a Bonafont. Con esta enmienda, la parte demandante añadió al pleito una causa de acción federal sobre la cual la Corte federal tiene total jurisdicción para su adjudicación. *Scott v. Machinists Automotive Trades D. Lodge*, 827 F.2d 589, 591 (9no Cir. 1987).

Aparte de enmendar la demanda, del expediente del caso no se desprende que la parte demandante haya presentado, dentro de los treinta (30) días siguientes a la presentación de la notificación de traslado, una moción para que el pleito fuera devuelto al tribunal de origen por ser erróneo en derecho el traslado del caso. 28 U.S.C. sec. 1447.

A tales efectos, la Corte federal asumió jurisdicción sobre el caso de autos y emitió sentencia al respecto.

Mediante la referida sentencia, la Corte federal desestimó la causa de acción federal contra Union, por entender que ella estaba prescrita y, a su vez, desestimó las causas de acción de los familiares de Bonafont por éstos carecer de una acción legitimada. La Corte federal adjudicó estas causas de acción al amparo de su jurisdicción suplementaria discrecional. En cuanto a las alegaciones sobre la aplicabilidad del R.L.A. y el F.A.A., la Corte federal adujo que ellas no controlaban las causas de acción sobre despido injustificado y difamación, por lo que las disposiciones de uno y otro estatuto no aplicaban al caso de autos. Habiéndose determinado que dichos estatutos no aplicaban al caso ante nos y que la acción contra Union estaba prescrita, la Corte federal decidió devolver discrecionalmente las restantes causas de acción estatales contra la demandada recurrida al tribunal de origen, por entender que al no existir otras acciones federales que le dieran jurisdicción original sobre el caso, lo más apropiado era que el foro estatal las adjudicara.

Así las cosas, las causas de acción sobre despido injustificado y difamación fueron devueltas al Tribunal Superior, Sala de Humacao, y es allí donde surge la controversia que tenemos que dilucidar en el día de hoy.

Recalcamos que durante todo el proceso federal y estatal, en ningún momento las partes en el pleito han cuestionado la jurisdicción de la Corte federal para adjudicar el caso. Sin embargo, los Jueces de este Tribunal que hoy disienten preferirían resolver este caso de manera simplista, a base de que la Corte federal carecía de jurisdicción para acogerlo cuando fue trasladado. A su entender, el traslado no era posible, ya que el pleito incoado por los demandantes no planteaba ninguna cuestión federal que le diera jurisdicción sobre la materia.

La Sec. 1441(a) del *Federal Judiciary Act* de 1948 permite a un demandado *trasladar* cualquier acción civil, presentada inicialmente en un tribunal estatal, a la Corte federal, siempre y cuando dicho tribunal tenga jurisdicción original sobre el caso. 28 U.S.C. sec. 1441(a).

Si en algún momento, *antes de que la sentencia de la Corte federal sea final y firme*, surge que dicho caso fue trasladado impróvidamente y sin jurisdicción federal, la Corte federal debe devolverlo al tribunal de origen *sua sponte* o a petición de parte.[9] 28 U.S.C. sec. 1447.

Para llegar a la determinación de si tiene jurisdicción sobre la materia o no, la Corte federal tiene que referirse a la demanda original según ésta se encontraba para la fecha cuando la notificación de traslado fue presentada. En otras palabras, la jurisdicción de la Corte federal debe surgir de las alegaciones de la demanda original. *Carnegie-Mellon, Univ. v. Cohill*, 484 U.S. 343, 345–346 (1988); *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1,

---

[9] Véanse, además: *Primate Protection League v. Tulane Ed. Fund.*, 500 U.S. 72, 87 (1991); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 342 (1976); *State of Ohio v. Wright*, 992 F.2d 616, 617 (6to Cir. 1993); *Bregman v. Alderman*, 955 F.2d 660 (11mo Cir. 1992); *Mill Investments, Inc. v. Brooks Woolen Co., Inc.*, 797 F. Supp. 49, 51 (D. Me. 1992).

9–12 (1983); *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *Gully v. First Nat. Bank*, 299 U.S. 109 (1936); *In re Air Disaster*, 819 F. Supp. 1352, 1355 (E.D. Mich. 1993); *Donald I. Galen, M.D., Inc. v. McAllister*, 833 F. Supp. 761, 763 (N.D. Cal. 1992); *Bell v. Amcast Indus. Corp.*, 607 F. Supp. 486 (D.C. Ohio 1985); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 183 (1984). Si no surge de la demanda original una cuestión federal que le dé jurisdicción a la Corte de Distrito para ver el caso trasladado, él debe ser devuelto al foro de origen; entiéndase, al foro estatal. 28 U.S.C. sec. 1441(a). Esta doctrina es conocida en la jurisdicción federal como *well-pleaded complaint doctrine.*

Por otro lado, es norma reconocida que el traslado de un caso del tribunal estatal a la Corte federal no puede estar basado en una defensa federal, incluyendo la defensa de control del campo (*preemption*), aun cuando la defensa haya sido anticipada en la demanda o cuando ambas partes concuerden en que dicha defensa federal es la única cuestión que está realmente en controversia. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Laborers Vacation Trust*, supra; *Gully v. First Nat. Bank*, supra; y *In re Air Disaster*, supra, pág. 1355. No obstante, el Tribunal Supremo de Estados Unidos, en *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), desarrolló una excepción a la doctrina de que la cuestión federal surja de la demanda original (*well-pleaded complaint doctrine*) para que el traslado sea posible. Esta nueva doctrina es conocida como *Complete Preemption Doctrine.* Ella establece que una vez un tribunal establece que un área específica de derecho estatal está completamente controlada por un estatuto federal, toda causa de acción basada en el referido derecho estatal será considerada como si fuera una causa de acción federal gobernada por el derecho federal. *Caterpillar Inc. v. Williams*, supra, pág. 393.

Esto es, que si en una notificación de traslado a la Corte federal el demandado alega como defensa que, a pesar de

que de la demanda original sólo surgen causas de acción estatales, un estatuto federal controla completamente una de estas causas de acción, si la Corte federal determina que en efecto dicho estatuto controla completamente la causa de acción, ésta será considerada como una causa de acción federal gobernada por el derecho federal, dándole así jurisdicción a la Corte de Distrito sobre el caso trasladado. *Metropolitan Life Ins. Co. v. Taylor*, supra. A pesar de que existe esta excepción a la regla general, el Tribunal Supremo federal se ha mostrado renuente a extender la aplicación de dicha doctrina.

En la actualidad, la doctrina de *Complete Preemption* sólo ha sido extendida a casos relacionados con el *Labor Management Relation Act*[10] y con el *Employee Retirement Income Security Act*[11]. Metropolitan Life Ins. Co. v. Taylor, supra; *Caterpillar, Inc. v. Williams*, supra; *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557 (1968).

Reconocemos que en el caso de autos las alegadas causas de acción federales bajo el R.L.A. y el F.A.A. son en realidad defensas federales presentadas por la demandada en la notificación de traslado, las cuales no representan una cuestión federal que le diera jurisdicción a la Corte federal sobre el caso de autos. Tampoco se trata de estatutos federales que controlen completamente cualquiera de las causas de acción estatales de manera que dichas causas de acción puedan ser consideradas como unas federales gobernadas por el derecho federal. *In re Air Disaster*, supra; *Vail v. Pan Am Corp.*, 752 F. Supp. 648 (D.N. J. 1990); *Debevoise v. Rutland Railway Corporation*, 291 F.2d 379 (1961).

A pesar de todo lo antes expresado, la parte demandante *nunca* cuestionó la jurisdicción de la Corte federal para el caso trasladado, ni siquiera hizo alegación de que el traslado hubiese sido hecho incorrectamente o contrario a

---

[10] 29 U.S.C. sec. 185(a).
[11] 29 U.S.C. sec. 1144(a).

derecho. Por el contrario, la parte demandante prefirió sacar partido de su presencia involuntaria en la Corte federal para añadir una causa de acción federal a su demanda original. Entiéndase, la causa de acción añadida, mediante enmienda, por los demandantes contra la Unión.

A pesar de que la Corte federal erró al asumir jurisdicción sobre el caso de autos al momento del traslado, los demandantes le otorgaron una cuestión federal al caso, lo que tuvo el efecto de otorgar jurisdicción a la Corte federal sobre éste. Es obvio que si los demandantes hubiesen estado convencidos de que el caso no era trasladable, lo hubiesen cuestionado mediante una moción, lo que se conoce en la jurisdicción federal como *motion to remand*, o al menos hubiesen apelado a la Corte de Apelaciones del Primer Circuito, según lo requieren las Reglas de Procedimiento Civil federal. Véase 28 U.S.C. sec. 1291.

No habiéndose expresado la Corte federal en su sentencia en cuanto a que las causas de acción fueron trasladadas impróvidamente o sin jurisdicción federal, si la parte demandante consideraba que dicho traslado fue realizado contrario a derecho debió haber apelado la sentencia de la Corte federal. *Scott v. Machinists Automotive Trades D. Lodges*, supra, pág. 592. Si el caso hubiese sido apelado, la determinación de la Corte de Apelaciones no hubiese estado relacionada con la validez del traslado, ya que esta determinación correspondía hacerse antes de haber sido dictada la sentencia, sino con la cuestión de si la Corte federal hubiese tenido jurisdicción en el caso de haberse presentado originalmente en dicha corte. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702 (1972).

Sobre este particular, el Tribunal Supremo federal señaló en *Grubbs v. General Electric Credit Corp.*, supra, pág. 702, lo siguiente:

> ... [W]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was

properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.([12])

Si luego de apelado el caso, la Corte de Apelaciones determinaba que la Corte federal no tenía jurisdicción para verlo y adjudicarlo, entonces, mediante el dictamen de ese tribunal, la sentencia de la Corte federal podía ser declarada sin efecto. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5to Cir. 1994); *McKenzie v. United States*, 678 F.2d 571, 574 (1982).

La sección 1291 del *Federal Judiciary Act* de 25 de junio de 1948 es clara cuando dispone, en lo pertinente, lo siguiente:

> The courts of appeals (other than the United States Courts of Appeals for the Federal Circuit) shall have jurisdiction of appeals from *all final decisions of the district courts of the United States* ..., except where a direct review may be had in the Supreme Court. (Énfasis suplido.) 28 U.S.C. sec. 1291.

Según el Tribunal Supremo federal en *Firstier MTGE. Co. v. Investors MTGE. Ins. Co.*, 498 U.S. 269, 273–274 (1991), "[f]or a ruling to be final, it must 'en[d] the litigation on the merits', *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citation omitted), and the judge must, 'clearly declar[e] his intention in this respect' ". (Escolios omitidos.) Véase *U.S. v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958).([13])

No obstante, una excepción a esta regla general es lo que se conoce en la jurisdicción federal como *collateral order doctrine*. Esta doctrina permite apelaciones bajo la sección 1291, *supra*, de un pequeño grupo de órdenes que aunque no dan fin a la litigación de un caso en los méritos, sí

---

([12]) Véase, además, *Local Union 598 Etc. v. J.A. Jones Const. Co.*, 846 F.2d 1213, 1215 (9no Cir. 1988).

([13]) En *Carr v. American Red Cross*, 17 F.3d 671, 675 (3er Cir. 1994), la Corte de Apelaciones del Tercer Circuito señaló que, como regla general, una decisión final es aquella que da fin a la litigación en los méritos y no deja nada a la corte para adjudicar, sino sólo ejecutar la sentencia.

concluyen algunas de las controversias importantes del pleito que están separadas de los méritos del caso. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *Waco v. U.S. Fidelity & G. Co.*, 293 U.S. 140, 143–144 (1934).

Desde *City of Waco v. United States F. & G. Co.*, supra, es norma conocida en la jurisdicción federal que una corte de distrito no puede evitar la revisión en apelación de una orden colateral *final* suya para devolver el caso al foro estatal. *Powers v. Southland Corp.*, 4 F.3d 223, 226 (3er Cir. 1993).

Sin embargo, para que dicha orden de la Corte federal pueda efectivamente ser apelada, ella tiene que preceder a la orden de la corte de devolver el caso al foro estatal y estar separada de las causas de acción que dicha corte devuelva al foro de origen.

> ... We recently held in *Powers v. Southland Corp.*, [supra], that for a Collateral order to come under the *City of Waco* rule, the order must be both logically precedent to, and separable from, the remand decision. *Carr v. American Red Cross*, 17 F.3d 671, 675 (3er Cir. 1994).

En el caso de autos, la Corte federal desestimó la acción por representación indebida contra Union por prescripción y las acciones de los parientes de Bonafont, porque a su entender dichos codemandantes no tenían acción legitimada para presentarla. Estas dos (2) órdenes de desestimación de la Corte federal precedieron y son separables de las causas de acción estatales devueltas al foro estatal, entiéndase, las acciones de despido injustificado y difamación de Bonafont. Dichas órdenes de desestimación constituyen una determinación final y firme de la Corte federal bajo la sección 1291, *supra*, por lo que tenían que ser revisadas en apelación si los demandantes no estaban de acuerdo con el dictamen de la Corte federal al respecto. *Cohen v. Beneficial Loan Corp.*, supra, págs. 546–547. No habiéndose apelado dichas órdenes a la Corte de Apelaciones para el Pri-

mer Circuito, el dictamen de Distrito en cuanto a ellas es final y firme, por lo que goza de total validez. *Carr v. American Red Cross*, supra, págs. 675–676.

Por otro lado, si lo que se estuviera cuestionando en el caso ante nos fuera la orden de la Corte federal de devolver las causas de acción sobre despido injustificado y difamación, la situación sería otra. Esto se debe a que, como regla general, la orden de una Corte federal de devolver un caso o causa de acción ante su consideración al foro estatal no son revisables por la Corte de Apelaciones. *Lemos v. Fencl*, 828 F.2d 616 (9no Cir. 1987); *Dunkin Donuts of America v. Family Enterprises, Inc.*, 381 F. Supp. 371 (D. Md. 1974).

Si la Corte federal devuelve un caso a base de que el proceso de traslado fue defectuoso o porque no tenía jurisdicción sobre la materia, la Corte de Apelaciones no puede revisar la orden de la Corte federal de devolver el caso al foro estatal. 28 U.S.C. sec. 1447(d).[14]

No obstante, si la orden de la Corte federal de devolver al foro estatal causas de acción estatales fue discrecional, la Corte de Apelaciones puede revisar en apelación dicha determinación. *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545 (9no Cir. 1994); *Albertson's Inc. v. Carrigan*, 982 F.2d 1478 (1993); *In re Surinam Airways Holding Co.*, 974 F.2d 1255 (11mo Cir. 1992).

En el caso ante nuestra consideración, tanto la orden de desestimación de las dos (2) causas de acción antes mencionadas, incluyendo la desestimación de las causas de acción estatales de los familiares de Bonafont, como la orden de devolver las dos (2) causas de acción estatales al foro de origen eran revisables por la Corte de Apelaciones. La Corte federal devolvió discrecionalmente las causas de acción de Bonafont, porque —entendiéndose con jurisdicción federal para ver el caso— concluyó que lo más recomenda-

---

[14] Véanse, además: *Zuniga v. Blue Cross and Blue Shield of Michigan*, 52 F.3d 1395, 1400 (6to Cir. 1995); *Van Meter v. State Farm Fire and Cas. Co.*, 1 F.3d 445, 449 (6to Cir. 1993).

ble, luego de eliminadas todas las acciones que le daban jurisdicción original sobre el caso, era devolver las acciones estatales restantes al foro de origen.

La Corte federal adujo en su orden que al eliminarse las causas de acción federales que le daban jurisdicción sobre el caso, las restantes acciones estatales predominaban substancialmente sobre las acciones que originalmente le habían dado jurisdicción, por lo que lo más adecuado era devolverlas. En ningún momento se desprende de la sentencia de la Corte federal que las restantes causas de acción estatales hayan sido devueltas porque el proceso de traslado fue defectuoso o por ausencia de jurisdicción sobre la materia. Sin lugar a dudas, la decisión de la Corte de Distrito fue totalmente discrecional, ya que pudo haberlas adjudicado al amparo de su jurisdicción suplementaria discrecional, pero prefirió enviarlas al foro de origen.

En conclusión, si los recurrentes hubiesen querido realmente cuestionar tanto la orden de desestimación de la causa de acción federal contra Union y las causas de acción estatales de los parientes de Bonafont como la orden de devolver las restantes causas de acción estatales al foro de origen, tenían disponible el procedimiento de apelación de la Corte de Apelaciones del Primer Circuito para así hacerlo. De igual manera, si hubiesen querido cuestionar la jurisdicción de la Corte federal para acoger el traslado del caso, también tenían disponible la apelación a esos efectos.

Los Jueces disidentes le hacen caso omiso a este estricto orden procesal establecido en la jurisdicción federal y pretenden poner fin a este caso mediante la determinación de que la Corte de Distrito no tenía jurisdicción para acoger el traslado del caso, lo que a su entender le impedía adjudicar las causas de acción de los parientes de Bonafont, al amparo de la jurisdicción suplementaria discrecional.

Una realidad jurídica sobrevive la opinión de los Jueces que hoy disienten: este Tribunal carece de autoridad para

dejar sin efecto una sentencia final y firme de la Corte federal, no apelada por las partes, por falta de jurisdicción sobre la materia. Veamos.

## VI

Desde las postrimerías del pasado siglo, la Corte Suprema de Estados Unidos, en *B. & O. Railroad v. Baugh*, 149 U.S. 368 (1893), describió, en términos generales, la limitada capacidad de la jurisdicción federal para intervenir en procedimientos estatales.

> ... [T]he Constitution of the United States ... recognizes and preserves the autonomy and independence of the States— independence in their legislative and independence in their judicial developments. Supervision over either the legislative or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States. Any interference with either, *except as thus permitted*, is an invasion of the authority of the State and its independence. (Énfasis suplido.) *B. & O. Railroad v. Baugh*, supra, pág. 401.

Posteriormente, la famosa decisión de *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), recalcó la separación jurídica que debe existir entre las dos (2) jurisdicciones, entiéndase la estatal y la federal:

> ... Congress has no power to declare substantive rules of common law applicable to a State whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. Íd., pág. 78.

El reverso de esa moneda es la interferencia de tribunales estatales sobre determinaciones previas de cortes federales, como ocurre en el caso de autos.

Los casos más significativos sobre esa desbalanceada situación surgieron dentro del contexto de la expedición de *habeas corpus* estatales sobre confinados federales. Ante esa situación, el Tribunal Supremo federal expresó lo que

se ha convertido en un axioma en nuestro ordenamiento jurídico: "[n]o state can authorize one of its judges [to] exercise judicial power [within] the jurisdiction of another and independent government". Así lo expresó dicho tribunal en *Ableman v. Booth and United States v. Booth*, 62 U.S. 506, 516–517 (1858), en cuanto a un dictamen de una corte del estado de Wisconsin en el que se liberó a un confinado federal.

Posteriormente, en *Tarble's Case*, 80 U.S. 397, 406–408 (1871), esa misma corte, en respuesta a otro *habeas corpus* dictado por un tribunal de Wisconsin para que se le diera la libertad a un prisionero federal, se pronunció sobre la relación entre una jurisdicción estatal y la federal:

> ... *There are within the territorial limits of each State two governments, restricted in their spheres of action, but independent of each other.* ...
> *Such being the distinct and independent character of the two governments,* ... [*it*] *follows that neither can intrude with its judicial process into the domain of the other*, except so far as such intrusion may be necessary on the part of the [Federal G]overnment to preserve its rightful supremacy. (Énfasis suplido.) *Tarble's Case*, supra, págs. 406–407.

De esta manera se sostuvo que las jurisdicciones estatales y la federal se deben respeto mutuo, cada una absteniéndose de infringir sobre el territorio jurídico de la otra.

Por todo lo antes expresado, si nuestro Tribunal se inmiscuye en la revisión de sentencias dictadas por otra jurisdicción, en este caso la federal, quedaría la puerta abierta para que nuestro Foro se convierta en un tribunal con una capacidad revisora sobre la corte de distrito federal. Lo apremiante de estos postulados nos impide revocar una determinación, final y firme, de la Corte federal, aun cuando ésta haya sido errónea o sin jurisdicción. Es ante esta preocupación que este Tribunal no debe cruzar la sólida —aunque imaginaria— frontera que separa las dos (2) jurisdicciones, ni aún con la súplica de las partes de que

nuestra jurisdicción tome autoridad sobre un procedimiento perteneciente a la jurisdicción federal.

Al deliberar sobre los méritos que apoyan el ataque colateral presentado por la parte peticionaria, nos encontramos ante el violento choque de dos (2) intereses de alta importancia jurídica. El primero constituye la importancia de que la determinación de la Corte federal sea válida y el segundo persigue la importancia del hecho de dicha determinación sea final.([15]) Véanse: *Durfee v. Duke*, 375 U.S. 106 (1963); *Stoll v. Gottlieb*, 304 U.S. 554 (1938), reconsideración denegada, 305 U.S. 675. Somos del criterio que, considerados los hechos del caso de autos y las alternativas que tuvo disponibles la parte peticionaria, el segundo interés descrito tiene mayor peso. Véase *Stoll v. Gottlieb*, supra. En *Ramos González v. Félix Medina*, supra, pág. 339, acogimos de la doctrina federal de cosa juzgada el precepto siguiente:

> *La doctrina federal de cosa juzgada está cimentada sobre el interés en preservar la finalidad, efectividad y certidumbre de las sentencias. Por eso se ha resuelto repetidamente que una sentencia tiene efectos de cosa juzgada aunque sea errónea. E.g. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398–399 (1981), y casos allí citados.* Como dijo el Profesor Brainerd Currie, "la primera lección que uno debe aprender en la materia de *res judicata* es que las determinaciones judiciales no deben ser confundidas con la verdad absoluta". ... B. Currie, *Mutuality of Collateral Estoppel: Limits of the "Bernhard" Doctrine*, 9 Stan. L. Rev. 281, 315 (1957). (Énfasis suplido.)

La trayectoria histórica de la evolución de la doctrina de ataque colateral está bisectada en dos (2) períodos. Tradicionalmente se favorecía la predominancia del interés de *la validez de la sentencia emitida por un tribunal de otra jurisdicción*. Ese período doctrinal intentaba edificar la legitimidad de las decisiones jurídicas. Sin embargo, esa doc-

---

([15]) Ese interés también es seminal a nuestra doctrina de cosa juzgada. Recordemos que en *Pérez v. Bauzá*, 83 D.P.R. 220, 225 (1961), establecimos que la doctrina de cosa juzgada tiene la función primordial de ponerle fin a los litigios.

trina que protegía la validez de las sentencias sobre la finalidad de éstas, es inherentemente errada. Véase el comentario A en 1 *Restatement of the Law: Judgements 2d* Sec. 12, pág. 117 (1980). La prioridad de corregir la determinación emitida por otra jurisdicción para cerciorar su validez constituía un paso miópico que acercaba a los tribunales al borde entrópico de que las jurisdicciones no permanezcan dentro de sus confines. *Nelson v. Iowa-Illinois Gas and Electric Comp.*, 259 Iowa 101 (1966).

La aplicación tradicional de la doctrina de ataque colateral pereció ante los beneficios ofrecidos por lo que se ha convertido en la doctrina vigente. La doctrina contemporánea es superior a la anterior, porque llega al mismo efecto sin dilatar los procedimientos judiciales. Al impedir que una segunda jurisdicción resucite la causa de acción ya resuelta por el otro foro, se fomenta la finalidad de esa sentencia y la economía en el proceso adjudicativo. A tales efectos, la parte desfavorecida tiene la facultad de acudir a la corte de apelaciones correspondiente para revisar la sentencia de la corte de distrito.

Por las razones antes mencionadas, los tribunales han redirigido sus prioridades, dejando atrás la predominancia de la validez de la determinación original para favorecer su finalidad. Para una mejor descripción de la evolución de esta doctrina véanse: 19 *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d* Sec. 4428 (1996); Nota, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgements*, 87 Yale L.J. 164 (1977); B. Boskey y R. Braucher, *Jurisdiction and Colateral Attack: October Term, 1939*, 40 Colum. L. Rev. 1006 (1940). Entendemos, por ende, que la doctrina contemporánea debe ser aplicada al caso de autos.

El *Restatement of Judgements*, supra, expone la doctrina vigente sobre los ataques colaterales por razón de falta de jurisdicción sobre la materia. El citado *Restatement of Judgments*, en su Sec. 11, dispone que la determi-

nación de un tribunal está debidamente emitida sólo si éste cuenta con jurisdicción sobre la materia ventilada.

> *Sec. 11    Subject Matter Jurisdiction*
> A judgement may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action. *Restatement of Judgements*, supra, Sec. 11, pág. 108.

Esa regla, sin embargo, no dispone la invalidez automática de una sentencia emitida por un tribunal que posteriormente se ataca por éste no haber tenido jurisdicción sobre la materia.

Para evaluar los méritos de ese ataque colateral, el *Restatement of Judgements*, supra, Sec. 12, pág. 115, señala:

> *Sec. 12    Contesting Subject Matter Jurisdiction*
> When a court has rendered a judgement in a contested action, *the judgement precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation* except if:
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction in subsequent litigation that its entertaining the action was manifest abuse of authority: or
> (2) Allowing the judgement to stand would substantially infringe upon the authority of another tribunal or agency of government; or
> (3) The judgement was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgement should have an opportunity belatedly to attack the courts subject matter jurisdiction. (Énfasis suplido.)

Esa doctrina nos indica que no debemos inmiscuirnos en una determinación emitida por una Corte federal, a menos que ésta haya carecido, de forma crasa, de la capacidad para ventilar la acción.

Somos del criterio de que ninguna de las excepciones generalmente reconocidas sobre esa regla doctrinal son aplicables al caso de autos. La Corte federal incidió al considerarse competente para ejercer su jurisdicción suple-

mentaria discrecional sobre la causa de acción estatal que hoy nos ocupa, pero dicha acción no representa un abuso de su discreción; tampoco usurpó la competencia jurisdiccional de otro tribunal, ni se trata de una situación en la que el tribunal sentenciador carecía de la capacidad de llegar a su dictamen de una manera informada.

La doctrina moderna es clara en cuanto a que el principio de finalidad de una sentencia prevalece en casos en que las partes fallaron al no litigar la controversia de jurisdicción sobre la materia ante el tribunal sentenciador, y en los que el tribunal en cuestión no consideró su capacidad jurisdiccional sobre la acción presentada.([16])

En estos casos, el factor decisivo es también el pilar edificante de la doctrina de *res judicata* en cuanto a la finalidad de lo dispuesto sobre una causa de acción: lo juzgado se mantiene firme sobre lo litigado por las partes, y también sobre los argumentos y las bases que las partes debieron haber litigado en su momento.([17])

---

([16]) Un caso más claro sería si la Corte federal se hubiese pronunciado sobre la jurisdicción concedida por el traslado. La jurisprudencia persuasiva es clara al señalar que la adjudicación del tribunal sentenciador sobre la existencia de jurisdicción sobre la materia para ventilar la acción, claramente precluye que un foro de otra jurisdicción ejerza sobre lo dispuesto, por esto ser cosa juzgada. Véanse: *Perry v. Farley Brothers Moving & Storage, Inc.*, 86 Cal. Rptr. 397 (1970); *Durfee v. Duke*, 375 U.S. 106 (1963); *Watts v. Town of Green Valley*, 213 So. 2d 398 (1968); *State Compensation Insurance Fund v. Luna*, 397 P.2d 231 (Colo. 1964); *Van Natta v. Columbia County*, 388 P.2d 18 (Oreg. 1956); *Sherrer v. Sherrer*, 334 U.S. 343 (1948); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66 (1939), rec. denegado, 309 U.S. 693 (1940). Sin embargo, aún en el caso de autos, en el cual la Corte federal no llegó a expresarse sobre la jurisdicción sobre la materia, la aplicación correcta nos lleva a sostener la predominancia de la determinación dictada por ese foro ante ataques colaterales presentados en otra jurisdicción.

([17]) "[A] judgement as to jurisdiction over the subject matter is conclusive, not only as to the actual question decided, but to every matter and question which the plaintiff could present within the purview of the first action." *Stucker v. County of Muscatine*, 87 N.W.2d 452, 456 (1958). Véanse, también: *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334 (5to Cir. 1996); *Thornton v. Little Sisters of the Poor*, 380 A.2d 593, 595 (1977); *Levy v. Cohen*, 561 P.2d 252, 257 (Cal.), *cert.* denegado, 434 U.S. 833 (1977); *Nuernberger v. State*, 359 N.E.2d 412, 415–416 (1976); *In Matter of C.A.P.*, 359 A.2d 11, 12 (1976); *In re Estate of Dalton*, 246 So.2d 612, 614 (1971); *Rhodes v. Houston*, 258 F. Supp. 546 (D. Neb. 1966), confirmado, 418 F.2d 1309 (8vo Cir. 1969), *cert.* denegado, 397 U.S. 1049 (1970); *In re Estate of Rougeron*, 217 N.E.2d 639, 643–644, *cert.* denegado, 385 U.S. 899 (1966); *Taylor v. England*, 213 A.2d 821, 823 (1965); *Chicot County Dist. v. Bank*, 308 U.S. 371, 377–378 (1940).

El *Restatement of Judgements*, supra, Sec. 12 (comentario "D"), pág. 120, explica que: "Even if the subject matter jurisdiction has not been raised and determined, the judgement after becoming final should ordinarily be treated as wholly valid if the controversy has been litigated in any other respect". Ante esto, es un hecho cierto que la Corte federal presumió la validez del traslado y la jurisdicción derivada de éste. Sin embargo, la parte peticionaria falló al no plantear en ningún momento de la trayectoria de la discusión del caso ante la Corte federal las deficiencias del traslado y su correspondiente incapacidad de proveer a esa corte jurisdicción sobre la materia litigada. Más aún, dicha parte optó por no presentar apelación alguna ante la Corte de Apelaciones para el Primer Circuito federal, provocando de esta manera que la determinación de la Corte federal se convirtiera en final y firme. Por lo tanto, los derechos de la parte peticionaria no yacen indebidamente contravenidos por la adecuada aplicación de esta doctrina. Esa parte debió plantear la deficiencia jurisdiccional a la Corte federal o en su correspondiente corte apelativa. A tales efectos, nuestra decisión de no intervenir sobre la orden dictada por ese tribunal no representa una injusticia a la parte afectada.

En *Hinton v. Hinton*, 395 A.2d 7 (1978), la Corte de Apelaciones del Distrito de Columbia indicó lo siguiente:

> If a court were to render judgement without according the defendant proper notice (or without personal jurisdiction or subject matter jurisdiction), that judgement would be void and of no effect. ... *If, however, the party against whom such a judgement is entered has an opportunity to appeal therefrom and forgoes that opportunity, the judgement is valid. The defendant then is bound by the judgement and cannot collaterally attack the ruling.* (Énfasis suplido.)[18]

Esta es la llamada doctrina del *bootstrap principle*. El

---

[18] Véanse, también: *Durfee v. Duke*, supra, págs. 113–114; *Stoll v. Gottlieb*, 305 U.S. 165, 171–172 (1938); *American Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932); *Baldwin v. Iowa State Traveling Men's Ass'n.*, 283 U.S. 522, 524–526 (1931).

Prof. Dan B. Dobbs explica el precepto de la forma siguiente:

> ... If [...] the sovereign has by implication granted the court jurisdiction to determine its own jurisdiction, then the court's decision about its own jurisdiction is a valid one. If erroneous, it may be appealed; however, like other valid but erroneous decisions, it may not be collaterally attacked. It is res judicata. D. Dobbs, *The Validation of Void Judgements: The Bootstrap Principle; Part I-The Rationale of Bootstrap*, 53 Va. L. Rev. 1003, 1012 (1967).

El *bootstrap principle* preconiza la esencial proposición de que, si un tribunal de justicia cuenta con la potestad de establecer los límites de su propia jurisdicción,[19] y si la parte perjudicada desea que la determinación del tribunal sea revisada, el remedio disponible es la apelación.[20] Procede el profesor Dobbs a comentar:

> The bootstrap principle is thus both logical and politic. It offers the merit of following the sovereign grant of power and limitations of power, and at the same time offers an acceptable flexibility in application: it will not be applied blindly to validate *all* judgements. Dobbs, *supra*, pág. 1013. Véase, también,

---

[19] Sobre esa capacidad del tribunal sentenciador, la Corte Suprema federal ha establecido:

"A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators. There must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court. ... *Every court in rendering a judgement, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter.* An erroneous affirmative conclusion as to jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort .... When an erroneous judgement, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgement is *res judicata. After a federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact.* (Escolios omitidos y énfasis suplido.) *Stoll v. Gottlieb*, supra, págs. 171–172.

[20] De revisarse la orden emitida por la Corte federal, estaríamos eliminando el incentivo de que las partes desfavorecidas lleven su solicitada revisión a los tribunales apelativos correspondientes. Esas partes estarían en posición de acudir inmediatamente a otra jurisdicción y, mediante un ataque colateral, reclamar la invalidez de la determinación ya controlante sin tener que agotar primero los remedios apelativos disponibles en la jurisdicción proveniente.

D. Dobbs, *The Validation of Void Judgements: The Bootstrap Principle; Part II-The Scope of Bootstrap*, 53 Va. L. Rev. 1241 (1967).

A base de este principio, no estamos de acuerdo con que la parte peticionaria quedó sin remedio o recurso ante la determinación desfavorable de la Corte federal. La parte debió apelar esa decisión a los tribunales de mayor jerarquía de esa estructura jurídica. Además, pasado el término para presentar oportunamente tal apelación ante la Corte del Primer Circuito federal, la parte debió estudiar qué remedios tenía aún disponibles ante la jurisdicción federal en cuanto a las causas de acción desestimadas por la Corte federal.

A tales efectos, este Tribunal no puede invalidar o afectar de manera alguna una orden emitida por una corte federal. Los errores cometidos por los tribunales de primera instancia deben ser corregidos por los tribunales apelativos correspondientes, los cuales existen para cumplir con esa función. Dicha función no le corresponde a los tribunales de otra jurisdicción.

Ante la situación de hechos del caso de autos, algunos Jueces de este Tribunal, en su afán de corregir el error cometido por la Corte federal, pretenden invadir las fronteras jurisdiccionales que rodean ese foro. Respondiendo a nuestra obligación de proteger la integridad estructural de cada jurisdicción, y dirigidos por nuestro deber de autolimitación, nos negamos a cruzar ese "Rubicón".

## VII

Habiéndose concluido que la sentencia de la Corte federal, en cuanto a la desestimación de las causas de acción de los parientes de Bonafont, es final y firme y que ésta goza de validez por no haber sido apelada en la Corte de Apelaciones del Primer Circuito, nos resta dilucidar si en efecto

dicho dictamen representa cosa juzgada a base de la doctrina estatal al respecto.

Hemos dispuesto en reiteradas ocasiones que se considerarán cosa juzgada no sólo las cuestiones litigadas y adjudicadas, sino también aquellas que pudieron litigarse y adjudicarse con propiedad aun cuando no fueron planteadas. *Díaz Maldonado v. Lacot*, supra, pág. 274; *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, 687 (1979); *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 950 (1972).

La doctrina estatal de cosa juzgada requiere que estén presentes ciertos requisitos en el caso en cuestión de manera que pueda plantearse, en un segundo litigio, la defensa de cosa juzgada y que el pleito no pueda litigarse de nuevo. Estos requisitos son: (1) que haya una primera sentencia *válida, final y firme* que adjudique los hechos y resuelva una controversia en sus méritos; (2) que las partes en el primer litigio sean las mismas en el segundo; (3) que en ambos pleitos se trate del mismo objeto o asunto; (4) que en el primer pleito se haya pedido igual remedio que el que se pide en el segundo, y (5) que las partes litiguen en la misma calidad en ambos pleitos. Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343. Véanse, además: *Banco de la Vivienda v. Carlo Ortiz*, 130 D.P.R. 730 (1992); *Negrón v. C.I.T. Fin. Serv.*, 111 D.P.R. 657, 661 (1981); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732–733 (1978).

No hay duda de que todos estos requisitos están presentes en el caso de autos. Las causas de acción de los familiares de Bonafont fueron resueltas mediante una sentencia válida, final y firme,[21] a pesar de que no se llevó a cabo un descubrimiento de prueba ni se efectuó un juicio en su fondo. La Corte federal desestimó la causa de acción de los

---

[21] A pesar de que los fundamentos de la sentencia de la Corte federal son erróneos, al no haber sido apelada en la Corte de Apelaciones del Primer Circuito, dicho dictamen sigue teniendo valor y eficacia como sentencia válida, final y firme. *Ramos González v. Félix Medina*, 121 D.P.R. 312, 339–340 (1988); *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 275 (1989). Véase, además, *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

familiares de Bonafont por entender que no tenían acción legitimada para reclamar daños por las expresiones difamatorias hechas contra Bonafont, luego de haber examinado las leyes de Puerto Rico sobre difamación e interpretado la jurisprudencia que entendió vigente para esa fecha sobre este tema.

Este Tribunal ha sido claro al establecer que en cuanto a la desestimación de una acción, tanto bajo la doctrina de cosa juzgada estatal como bajo la federal, se exige, para que esta defensa sea aplicable, que dicha desestimación haya sido en los méritos. Véase *Díaz Maldonado v. Lacot*, supra, pág. 274.

En el caso de autos, es indiscutible que la sentencia dictada por la Corte federal fue final y firme, ya que la moción de reconsideración que presentaron los peticionarios ante el foro federal se presentó fuera de término, y la sentencia no fue apelada ni recurrida dentro del término establecido por ley.

En cuanto a si la desestimación de las causas de acción de los parientes de Bonafont por falta de legitimación activa fue en los méritos, tampoco hay duda al respecto. Tanto en el derecho sustantivo estatal como en el federal, a menos que el tribunal en su orden de desestimación lo disponga de otro modo, cualquier desestimación, excepto la que se dicte por falta de jurisdicción o por haber omitido acumular una parte indispensable, tiene el efecto de una adjudicación en los méritos.[22]

Sobre este particular, debemos aclarar que la Corte federal tenía la facultad para adjudicar las causas de acción de los parientes de Bonafont y devolver al foro de origen las restantes causas de acción estatales. Veamos.

Cuando un tribunal federal asume jurisdicción sobre un

---

[22] Véase *Banco de la Vivienda v. Carlo Ortiz*, 130 D.P.R. 730 (1992). Véanse, además: Regla 39.2(c) de Procedimiento Civil vigente, 32 L.P.R.A. Ap. III; Regla 41(b) de Procedimiento Civil federal, 28 U.S.C.; *Federated Deparment Store, Inc. v. Moitie*, supra.

caso trasladado del foro estatal, dicha jurisdicción se extiende no sólo a las causas de acción federales existentes en él, sino también sobre las acciones estatales que estén íntimamente relacionadas con aquellas causas que le dieron jurisdicción original sobre el caso. Esta facultad se la otorga a las cortes federales la doctrina de jurisdicción suplementaria discrecional antes mencionada.

Según esta doctrina, cuando consideraciones de economía judicial, conveniencia y justicia así lo requieran, una corte federal puede adjudicar tanto las causas de acción federales como las estatales existentes en el caso trasladado. *Carnegie-Mellon Univ. v. Cohill*, supra, pág. 729. Sin embargo, una nueva interpretación jurisprudencial de la doctrina de jurisdicción suplementaria discrecional señala que en los casos en los que todas las causas de acción federales son desestimadas, lo más recomendable es devolver todas las causas de acción estatales al foro de origen para una mejor adjudicación de éstas. Íd., págs. 729–730. No obstante, esta nueva interpretación de la doctrina no es mandatoria, sino discrecional del tribunal. Íd. Esto se debe a que una vez un tribunal asume jurisdicción sobre un caso trasladado del foro estatal mantiene su jurisdicción suplementaria discrecional sobre las causas de acción estatales aunque todas las acciones federales sean desestimadas. *Carnegie-Mellon Univ. v. Cohill*, supra; *Mill Investment, Inc. v. Brooks Woolen*, supra, pág. 51; *Scott v. Machinists Automotive Trades*, supra, pág. 592; *Bright v. Bechtel Petrolewm, Inc.*, supra, pág. 771.

En cuanto a los otros requisitos que deben cumplirse para que aplique la doctrina de cosa juzgada, los familiares de Bonafont fueron codemandantes en el primer pleito que se ventiló en la Corte federal y son los que, junto a Bonafont, pretenden volver a plantear sus causas de acción ante el tribunal de instancia, a pesar de que éstas fueron desestimadas por la Corte federal. En este pleito, los familiares de Bonafont pretenden litigar en calidad de codemandan-

tes, como en el primer pleito, y piden idéntico remedio al Tribunal de Primera Instancia, con el mismo objeto o propósito de que se les compense por los daños que alegadamente sufrieron a raíz de la supuesta expresión difamatoria que se hizo contra su pariente Bonafont.

En vista de lo anterior, concluimos que la doctrina de cosa juzgada, según nuestro derecho sustantivo vigente, aplica al caso de autos.

Reconocemos que la doctrina de cosa juzgada no es absoluta ni debe aplicarse de manera inflexible "cuando hacerlo derrotaría los fines de la justicia, especialmente si hay consideraciones de orden público". *Mercado Riera v. Mercado Riera*, supra, pág. 953. Véase, además, *Pérez v. Bauzá*, supra, pág. 226. A pesar de lo anterior, los casos en los que este Tribunal no ha aplicado la doctrina de cosa juzgada han sido aquellos relacionados con acciones de filiación,[23] cuando la sentencia de un pleito anterior es final, pero no firme;[24] cuando se aplica la doctrina en el campo del derecho administrativo,[25] en el cual es mucho más flexible; cuando la apelación de la sentencia del primer pleito es desestimada por académica,[26] o cuando el primer pleito se ha desestimado por inactividad.[27]

Es obvio que este Tribunal ha optado por no aplicar la doctrina de cosa juzgada en casos de *gran interés público,* como son los casos de filiación, o cuando el efecto de aplicar dicha doctrina sea contrario a la política judicial de que los casos se ventilen en sus méritos, o cuando los fines de la justicia así lo ameriten.

A diferencia de *Pérez v. Bauzá*, supra, que trataba sobre una acción de filiación, del cual se desprendía con claridad un gran interés público, el caso de autos trata de una ac-

---

[23] Ver *Pérez v. Bauzá*, supra, y *Calaf v. Calaf*, 17 D.P.R. 198 (1911).

[24] Véase *Feliciano Ruiz v. Alfonso Develop. Corp.*, 96 D.P.R. 108 (1968).

[25] Véase *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978).

[26] Véase *Riera v. Pizá*, 85 D.P.R. 268 (1962).

[27] *Banco de la Vivienda v. Carlo Ortiz*, supra.

ción de daños y perjuicios por difamación en la que la parte realmente afectada (el señor Bonafont) por la supuesta expresión difamatoria, va a tener la oportunidad de defenderse y probar su caso en el foro estatal, además de recibir el remedio que por ley tenga derecho, de prevalecer en los méritos. No le restamos importancia a las causas de acción de los familiares de Bonafont, pero tampoco podemos darle visos de interés público a unas causas de acción que tratan sobre relaciones puramente privadas entre las partes, en las que están involucradas obligaciones patrimoniales y no familiares, que no justifican una desviación del efecto normal de la cosa juzgada. No hay duda de que a la persona realmente difamada y agraviada, a raíz de las alegadas expresiones difamatorias, de prevalecer en el tribunal de instancia se le hará justicia y recibirá el remedio que por ley le corresponda. Tampoco hay duda de que si la determinación de la Corte federal, en cuanto a la desestimación de las causas de acción de los familiares de Bonafont, hubiese sido apelada en la Corte de Apelaciones del Primer Circuito y allí hubieran prevalecido sobre la cuestión jurisdiccional, con gran probabilidad hubiesen podido presentar dichas acciones en el Tribunal de Primera Instancia a base de la doctrina establecida por este Tribunal en *Soc. de Gananciales v. El Vocero de P.R.*, supra.

Por otro lado, el hecho de que la Corte federal haya adjudicado las causas de acción de los parientes de Bonafont a base de una decisión de este Tribunal que no crea precedente, por tratarse de una sentencia, o de que este Tribunal se haya expresado sobre esta controversia en un caso posterior al dictamen de la Corte federal (que sí es precedente), de ninguna forma justificaría que este Tribunal determinara que la doctrina de cosa juzgada no aplica a este caso.

El Tribunal Supremo de Estados Unidos fue claro al expresar, en el caso *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981), lo siguiente:

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. ... Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. ... [A]n *"erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata .... A judgment merely voidable because based upon erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action].* Citas omitidas.)[28]

De igual manera, este Tribunal señaló en *Díaz Maldonado v. Lacot,* supra, pág. 275, que un cambio en la teoría del caso, o *el hecho de que se pretenda reclamar un derecho bajo una ley distinta,* o *que los fundamentos de la sentencia previa sean erróneos,* no afecta la aplicación de la doctrina de cosa juzgada.

Hemos sido claros al señalar que nuestro ordenamiento ha provisto el mecanismo de la revisión judicial precisamente para lograr la corrección de los errores judiciales y, a su vez, evitar la relitigación de los mismos asuntos en pleitos separados posteriores. *Ramos González v. Félix Medina,* supra, pág. 339. A tales efectos, nuestro interés en establecer un balance entre *la finalidad* de las sentencias y su *corrección* ha hecho posible que sólo excepciones reducidas, que han de ser aplicadas en circunstancias muy limitadas y particulares, se releve a una parte de una sentencia previa que —de ordinario— tendría efectos de cosa juzgada. Íd., pág. 340. Esto se debe a que los tribunales, tanto estatales como federales, no favorecen las repetidas declaraciones ad hoc acerca de la eficiencia, corrección y justicia de las sentencias, pues ello afectaría *el valor* y *la finalidad* de las sentencias al propiciar la relitigación masiva de las controversias ya adjudicadas. Íd. Debemos mantener siempre presente que la mera simpatía por la

---

[28] Véase, también, *Piazza v. Aponte–Roque,* 909 F.2d 35, 37–38 (1990).

posición de alguna de las partes o el que los fundamentos de un dictamen sean erróneos no son razones suficientes para perturbar el reposo de una controversia adjudicada. Íd. Nuestro derecho requiere que exista un *interés público* tras la decisión de relevar a una parte de una sentencia previa. Íd.

Concluimos, por los fundamentos expresados, que la doctrina estatal de cosa juzgada aplica en este caso en cuanto a las causas de acción de los familiares de Bonafont, y que el hecho de que este Tribunal haya decidido un caso, posterior a la determinación de la Corte federal, que sirva de precedente preciso en cuanto al derecho de los parientes de una persona difamada a reclamar por los daños sufridos a raíz de una expresión difamatoria manifestada contra ese familiar, no justifica que desviemos el efecto normal de la doctrina de cosa juzgada. Como bien señaló el Tribunal Supremo de Estados Unidos en *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917), y reiteró en *Federated Department Stores, Inc. v. Moitie*, supra, pág. 401:

> ... [T]he doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace", which should be cordially regarded and enforced by the courts ....

El derecho es, por su naturaleza, evolutivo y cambiante. Este Tribunal ha revocado normas anteriormente prevalecientes cuando así lo ha considerado necesario a los fines de la justicia. La Asamblea Legislativa continuamente amplía, modifica o elimina derechos. Las partes que instaron acciones judiciales, y las perdieron, a base de normas que subsiguientemente fueron modificadas y que, de haber existido cuando sus acciones fueron presentadas, le hubieran concedido un remedio, no pueden revivir tales acciones si el fallo judicial advino final y firme, según la doctrina de cosa juzgada. Trastocar estos principios sería perjudicial al

propósito de la finalidad de las sentencias judiciales y afectaría adversamente la sana administración de la justicia.

Por todo lo expuesto anteriormente, concurrimos con la sentencia que hoy certifica el Tribunal para confirmar la resolución recurrida.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la que se unen el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

Por las razones que expreso más adelante, disiento del resultado al que llega una mayoría de este Tribunal en el caso de autos, enunciado en la sentencia emitida. Lamento particularmente que con tal resultado se menoscaba la función primordial de este Foro de dilucidar y hacer valer los derechos consagrados en nuestro propio ordenamiento jurídico, que emanan de la autoridad legislativa y constitucional del Estado Libre Asociado de Puerto Rico. Veamos.

I

Antes que nada, es menester precisar cuál es la controversia ante nos. Sólo nos toca resolver si en este caso, al amparo de nuestra propia doctrina, debe dársele efecto de cosa juzgada al dictamen del foro federal que denegó la causa de acción de daños y perjuicios por difamación que surge al amparo del Código Civil de Puerto Rico, presentada ante nuestros tribunales por los parientes de Bonafont. Es decir, lo único que está ante nos, en el caso de autos, es cómo debe aplicarse aquí nuestra propia doctrina de cosa juzgada.

Como se sabe, la aplicación interjurisdiccional de la doctrina de cosa juzgada, en específico cuando se trata del efecto de una sentencia de un tribunal federal, es un

asunto complejo. Esto se debe a la conjunción de distintos factores como la doctrina de "entera fe y crédito", el principio de deferencia (*comity*) a las adjudicaciones de los foros federales, y las particularidades del sistema judicial federal, en el cual se dilucidan tanto derechos sustantivos federales como normas jurídicas que provienen de la competencia legislativa y constitucional estatal. Véase *Ramos González v. Félix Medina*, 121 D.P.R. 312, 326 (1988). Por esta razón no existen, ni pueden existir, normas unitarias que rijan esta cuestión. *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 272 (1989). En *Díaz Maldonado v. Lacot*, supra, pág. 272, explicamos que:

> Para determinar la norma de cosa juzgada a aplicar y cuán abarcadora debe ser su aplicación, cada caso debe ser objeto de cuidadoso análisis, tomando en consideración y ponderando, entre otros, factores tales como: el tipo de acción de que se trata; si la sentencia previa es de un tribunal de jurisdicción limitada; el fundamento jurisdiccional que tiene dicho tribunal para entender en el asunto; el derecho sustantivo resuelto (i.e. si es uno federal o estatal), y el fundamento utilizado para resolver el caso (i.e. si fue procesal, sustantivo o una combinación de ambos). (Citas omitidas.)

En *Díaz v. Navieras de P.R.*, 118 D.P.R. 297 (1987), y más tarde en *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992), resolvimos que en aquellos casos en los cuales la causa de acción fue llevada ante un tribunal federal y éste asumió jurisdicción por existir diversidad de ciudadanía, y posteriormente se presentó la sentencia allí dictada ante un tribunal estatal, el efecto de ésta se determinará de acuerdo con nuestra propia doctrina de cosa juzgada.([1]) Lo contrario sucede en los casos en que la decisión del foro federal se dicta al amparo de una reclamación o un asunto federal, ya que en éstos la norma o doctrina de

---

([1]) Esta postura se fundamenta en la premisa básica de que la doctrina de cosa juzgada es materia que pertenece al ámbito de derecho sustantivo y, por ende, rige *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Véase *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 303 (1987).

cosa juzgada que controla el asunto es la federal. *Ramos González v. Félix Medina*, supra. No obstante, en *Rodríguez Rodríguez v. Colberg Comas*, supra, pág. 218, citando a *Díaz Maldonado v. Lacot*, supra, págs. 272–273, aclaramos que aun cuando la dominante sea la norma federal, "hay que tener presente que aún en estos casos ... la doctrina federal de cosa juzgada no tiene que aplicarse, con todos sus efectos, a todos los posibles detalles del caso".

De acuerdo con lo expuesto antes, es evidente que en el caso de autos la dominante es nuestra propia doctrina de cosa juzgada. Aquí, el Tribunal de Distrito federal, al adjudicar la causa de acción que nos concierne —la de los parientes de Bonafont— lo hizo supuestamente al amparo de su jurisdicción suplementaria discrecional. En la jurisdicción federal se conoce como "jurisdicción suplementaria" a la unión y codificación de la antiguas doctrinas jurisprudenciales de jurisdicción accesoria (*pendent jurisdiction*) y de jurisdicción auxiliar (*auxiliary jurisdiction*). Véase 28 U.S.C. sec. 1367. La jurisdicción suplementaria de un tribunal federal le confiere jurisdicción sobre aquellas causas de acción estatales que estén relacionadas íntimamente *con una reclamación o causa de acción sobre las cuales exista jurisdicción federal original*; de forma tal, que constituyan todas un mismo caso o controversia bajo el Art. III de la Constitución de Estados Unidos. El tribunal federal puede, por lo tanto, asumir jurisdicción sobre todas las causas de acción, ya sean federales o estatales, que surjan de un mismo núcleo común de hechos determinativos (*common nucleus of operative facts*). El estatuto sobre jurisdicción suplementaria le confiere a los tribunales federales discreción para no ejercer esa jurisdicción en las situaciones que éste describe expresamente. Claro está, cuando un tribunal federal asume jurisdicción suplementaria sobre una causa de acción estatal, está obligado a adjudicarla aplicando el derecho sustantivo estatal. *United Mine Workers of America v. Gibbs*, supra.

En el caso ante nos, el tribunal federal asumió jurisdic-
ción y adjudicó unas causas de acción *fundamentadas ex-
clusivamente en el Derecho de Puerto Rico.* En esencia, con-
forme a la clara doctrina federal sobre el particular, dicho
foro actuó como un álter ego de este Tribunal Supremo.[2]
Si aplicamos las normas antes expuestas, el efecto en los
foros de Puerto Rico de la adjudicación del tribunal federal,
en cuanto a la causa de acción de los parientes de Bona-
font, está gobernado por nuestra doctrina autóctona de
cosa juzgada.

## II

Aclarado ya que en el caso de autos rige nuestra propia
doctrina de cosa juzgada, procede que repasemos breve-
mente su contenido, para luego precisar cómo debe apli-
carse a la cuestión ante nos.

Nuestra doctrina de cosa juzgada responde fundamen-
talmente a una consideración de conveniencia y orden
procesal. Se procura con ella, en esencia, ponerle fin a los
litigios para que no se eternicen las cuestiones judiciales y
para que no se someta de forma indebida a una persona a
las molestias que supone litigar repetidamente una misma
causa. *Pérez v. Bauzá,* 83 D.P.R. 220, 225 (1961). Reitera-
damente hemos señalado, sin embargo, que la defensa de
cosa juzgada debe ser aplicada *con flexibilidad.* En nume-
rosas ocasiones nos hemos apartado de la rigurosa aplica-
ción de la doctrina de cosa juzgada cuando razones de in-
terés público o de justicia así lo han requerido. *Pérez v.
Bauzá,* supra; *Millán v. Caribe Motors Corp.,* 83 D.P.R. 494
(1961); *Riera v. Pizá,* 85 D.P.R. 268 (1962); *Feliciano Ruiz*

---

[2] Véanse: 19 *Wright, Miller and Cooper, Federal Practice and Procedure: Ju-
risdiction and Related Matters 2d* Sec. 4507, pág. 207 (1996); *Salve Regina College v.
Russell,* 499 U.S. 225 (1991); *The Ascertainment of State Law in a Diversity Case,* 40
Ind. L.J. 541 (1965); C. Clark, *State Law in the Federal Courts: The Brooding Om-
nipresence of Erie v. Tompkins,* 55 Yale L.J. 267 (1946). Véase, también, *Vandenbark
v. Owens-Illinois Co.,* 311 U.S. 538 (1941).

*v. Alfonso Develop. Corp.*, 96 D.P.R. 108 (1968); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978). En particular, en *Pérez v. Bauzá*, supra, pág. 226, indicamos:

Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. ... Según se ha expresado, la doctrina descansa en el principio básico de que debe propiciarse la terminación de litigios, pero si la aplicación rigurosa de la misma derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida [la] justicia en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal. ... En otras palabras, *la regla no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso.* (Énfasis suplido.)

En reiteradas ocasiones hemos resuelto también que, para que nuestra doctrina de cosa juzgada sea aplicable, el tribunal que decidió el asunto en cuestión inicialmente debe haber tenido jurisdicción sobre éste. Si el tribunal no tenía jurisdicción, su decisión no surte el efecto de cosa juzgada. *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991); *Tartak v. Tribl. de Distrito*, 74 D.P.R. 862, 870 (1953).

A la luz de estas conocidas normas, pasemos a examinar la situación ante nos en el caso de autos.

### III

En su alegato, los recurrentes señalan que no se justifica en este caso darle efecto de cosa juzgada al dictamen en cuestión del foro federal. Esto debido a que el Tribunal de Distrito federal cometió un error craso al no reconocer, conforme a lo resuelto en *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122 (1994), la legitimación de los parientes de Bonafont para demandar por las alegadas expresiones difamatorias de la demandada.

El caso *Soc. de Gananciales v. El Vocero de P.R.*, supra,

fue resuelto el 7 de febrero de 1994. El Tribunal de Distrito federal, por su parte, emitió su resolución y orden desestimatoria de las causas de acción de los parientes de Bonafont en octubre de 1993, o sea, *antes* de que resolviéramos *Soc. de Gananciales v. El Vocero de P.R.*, supra. El foro federal, en su resolución y orden de octubre de 1993, aplicó lo que éste entendía que era la norma de Puerto Rico que regía en estos casos. Se fundamentó para ello en una interpretación suya de unas expresiones de algunos jueces de este Foro, que acompañaron la sentencia en *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977).

Es evidente que en este caso el tribunal federal pudo haber optado por un curso de acción más deferente. La decisión de *Torres Silva v. El Mundo, Inc.*, en que fundamentó su determinación, no era una opinión de este Tribunal, sino sólo una sentencia, por lo que no constituía un precedente vinculante de este Foro. En vista de ello, y tratándose de una cuestión novel, el tribunal federal quizás debió hacer uso del mecanismo de la *certificación*, para referirle a este Foro el novedoso asunto de Derecho puertorriqueño que tenía ante sí. Como se sabe, el Tribunal Supremo de Estados Unidos ha apoyado, de manera vigorosa y entusiasta, que se use el mecanismo de la certificación para que los tribunales federales obtengan la interpretación más autorizada del derecho estatal en casos como el de autos. *Lehman Brothers v. Schein*, 416 U.S. 386 (1974). No puede negarse, sin embargo, que la determinación de si se certifica o no es un asunto discrecional del foro federal.

Por otro lado, como la causa de acción en cuestión estaba fundamentada en el Derecho de Puerto Rico, y el foro federal había desestimado las alegadas cuestiones federales que supuestamente le concedían jurisdicción sobre el caso, es evidente que el Tribunal de Distrito federal pudo haber devuelto esta causa de acción al Tribunal de Primera Instancia de Puerto Rico, como hizo con las otras causas de acción que tenía ante sí —las de Bonafont— que también

surgían al amparo de las leyes del Estado Libre Asociado de Puerto Rico. El propio Tribunal Supremo de Estados Unidos ha indicado que en casos como los de autos, si las reclamaciones federales no tienen mérito, lo más propio es que el foro federal se abstenga de considerar las cuestiones de ley estatal adjuntas. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *Fox v. Custis*, 712 F.2d 84 (4to Cir. 1983); *Loutfy v. R.R. Donnelley & Sons, Co.*, 148 F.R.D. 599 (1993). Como bien se ha señalado en un estudio del American Law Institute, "[if] 'the federal element is the basis for jurisdiction is disposed of early in the case, ... it smacks of the tail wagging the dog to continue with a federal hearing of the state claim' ". *McFaddin Express, Incorporated v. Adley Corporation*, 346 F.2d 424, 427 (2do Cir. 1965), o como han señalado los eminentes comentaristas Wright, Miller y Cooper, en casos como los de autos, "federal courts should be mindful of the fact that they are courts of limited jurisdiction, and exercise restraint by not needlessly intruding on the jurisdiction of state courts". 14A *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d* 408 (1985). En este caso, el foro federal devolvió algunas de las causas de acción de ley estatal, pero retuvo y resolvió otras, las más novedosas, precisamente las que la propia doctrina federal de deferencia estatal señala que conviene devolver al foro estatal.

La cuestión de devolver unas causas de acción o no —como las de autos— al foro estatal, es, de nuevo, una que descansa en la discreción del foro federal. Igual que la decisión de certificar el asunto al foro estatal o no, ésta depende del sano juicio del foro federal. Puede pensarse que, por las razones de la política federal de deferencia al sistema de derecho estatal (*comity*) antes señalada, el foro federal debió haber ejercido su discreción de otro modo. No obstante, no procede que —sólo por ello— se resuelva que en nuestra jurisdicción no se le dará efecto de cosa juzgada a la decisión en cuestión del foro federal. La forma en que

ejerce su discreción el foro federal, aunque sea poco defe-
rente, nunca ha sido, ni debe ser, la razón para hacer ex-
cepciones en la aplicación de nuestra doctrina de cosa
juzgada. Pero, las dos actuaciones referidas del foro fede-
ral, precisamente porque son *discrecionales* y no mandato-
rias, *unidas a otras circunstancias* presentes en este caso,
pueden dar lugar a una instancia en la cual no deba dár-
sele efecto de cosa juzgada al dictamen federal en cuestión.
Es decir, al evaluar *todos los factores pertinentes del caso*,
como requiere nuestra doctrina y según lo explicamos en
*Díaz Maldonado v. Lacot*, supra, podría resolverse que
aquí no procedía dársele efecto de cosa juzgada al dictamen
federal en cuestión. Nótese que en este caso, si se le diera
efecto de cosa juzgada al dictamen discrecional del foro fe-
deral, se estaría creando una situación *injusta* para la
parte afectada por tal dictamen. Quedaría conculcado in-
debidamente el derecho de los parientes de Bonafont a ins-
tar una demanda para que se les indemnice por unos daños
sufridos por ellos. Se trata de la pérdida de un derecho de
gran importancia jurídica y social, como expresamente lo
reconociéramos en *Soc. de Gananciales v. El Vocero de P.R.*,
supra, pág. 135:

> No podemos escaparnos de la realidad sociológica y sicológica
> de que una esposa, hijos o padres de una persona que ha sido
> difamada, por su relación con el así difamado, también se pue-
> den ver afectados por la publicación de la difamación.
> A manera de ejemplo: los hijos, la esposa o los padres de una
> persona que ha sido difamada, al imputarle que es un "ladrón o
> un asesino", en ocasiones pueden sufrir daños y angustias men-
> tales debido al rechazo social que se desarrolla contra ellos a
> causa de su relación con el difamado; por el estigma que ello
> conlleva; por los comentarios y actitudes negativas que se de-
> sarrollan contra él y su familia, y por la mera relación de
> parentesco. Tal realidad, aunque triste, es inescapable. *Nuestro
> Derecho tiene que reconocer una causa de acción de ellos contra
> quien hizo tal difamación y causó los daños y angustias
> mentales. No podemos hacer justicia a medias.* (Énfasis en el
> original suprimido y énfasis suplido.)

El derecho a hacer este tipo de reclamación, por lo tanto,

responde a *un claro sentido de lo que es justo*, además a un interés claramente público de proteger la dignidad de la familia, piedra angular de nuestra estructura social. En el caso ante nos, si aplicásemos inflexiblemente la doctrina de cosa juzgada y el reclamante Bonafont en su día logra probar su caso, entonces sólo se habría hecho "justicia a medias" y se derrotaría así el propósito que indicáramos en *Soc. de Gananciales v. El Vocero de P.R.*, supra.

Por otro lado, también debe considerarse que, como el importante derecho en cuestión fue reconocido por este Tribunal apenas cuatro meses después del dictamen federal y se trata de un asunto cuya vindicación y dilucidación le compete primordialmente a este Foro, también quedaría afectada nuestra indelegable función de hacer valer y pautar el derecho en Puerto Rico. Finalmente, en este caso no están presentes ninguno de los intereses jurídicos que tradicionalmente justifican darle efecto de cosa juzgada a un dictamen judicial previo. No se trata de reclamaciones antiguas de las cuales resulte oneroso defenderse. Tampoco se trata de repetidos litigios que nunca terminan, ya que no fue la parte demandante la que provocó el traslado del pleito al foro federal.

En resumen, pues, como tanto nuestra doctrina como la federal —*Smith v. Pittsburgh Gage and Supply Company*, 464 F.2d 870 (3er Cir. 1972)— preconizan la norma de que no debe dársele efecto de cosa juzgada a un dictamen, si al así hacerlo se derrotan importantes fines de la justicia, claramente estaría justificado negarle tal efecto al dictamen discrecional del foro federal en cuestión, en el caso de autos. No obstante, no tenemos que descansar únicamente en este fundamento para ello, ya que existen otros fundamentos aun más elementales para no aplicar aquí la defensa de cosa juzgada.

# IV

Según surge de los hechos del caso de autos, el 26 de octubre de 1994, el tribunal federal desestimó las mociones de reconsideración presentadas por las partes, sin examinar de nuevo los méritos de las causas de acción que antes había desestimado. Las desestimó porque supuestamente eran tardías. Lo hizo *ocho meses y medio después* de nuestra decisión en *Soc. de Gananciales v. El Vocero de P.R.*, supra, mediante la cual emitimos la norma de derecho substantivo que controla controversias como la planteada aquí por los parientes de Bonafont.

Una de la mociones presentadas ante el foro federal no era sólo de reconsideración. Estaba titulada *Motion For Reconsideration And To Alter Or Amend Judgement.* Ello quiere decir que podía considerarse como una moción de relevo de sentencia, *que no hubiese sido tardía.* De cualquier modo, como el caso estaba aún *pendiente* ante el Tribunal de Distrito federal al momento de resolver las mociones aludidas, dicho foro estaba constitucionalmente obligado a modificar su dictamen anterior para aplicar en su caso nuestra decisión en *Soc. de Gananciales v. El Vocero de P.R.*, supra. No se trataba de un asunto discrecional. Es decir, el foro federal tenía que aplicar el derecho estatal. Su decisión previa había estado fundamentada en nuestra sentencia en *Torres Silva v. El Mundo, Inc.*, supra. Como decidimos *Soc. de Gananciales v. El Vocero de P.R.*, supra, que superaba a *Torres Silva v. El Mundo, Inc.*, supra, mientras estaba el caso de autos aún pendiente ante el foro federal, era menester aplicar entonces este último dictamen nuestro. Ese era el curso de acción correcto y obligatorio. Así lo ha establecido el Tribunal Supremo de Estados Unidos y otros foros federales. Así lo reconoce, además, la doctrina federal sobre el particular.

En efecto, en casos en los que un tribunal federal tiene que aplicar el derecho estatal, el Tribunal Supremo de Es-

tados Unidos ha resuelto que si el Tribunal Supremo del estado cambia la norma aplicable, el foro federal también tiene que cambiar su dictamen. Lo expresó así en el caso clave de *Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 542–543 (1941):

> While cases were pending here on review, this Court has acted to give opportunity for the application by the lower courts of statutes enacted after their judgments or decrees. ... These instances indicate that the dominant principle is that *nisi prius* and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered.
>
> ... [W]e are of the view that, *until such time as a case is no longer sub judice, the duty rests upon federal courts to apply state law ... in accordance with the then controlling decision of the highest state court. Any other conclusion would but perpetuate the confusion and injustices arising from inconsistent federal and state interpretations of state law.* (Énfasis suplido y escolios omitidos.) Véanse, además: *Nolan v. Transocean Air Lines*, 365 U.S. 293 (1961); *Huddleston v. Dwyer*, 322 U.S. 232 (1944).

La norma federal aludida es tan vinculante que un tribunal de circuito incluso ha resuelto que en tales casos debe aplicarse el nuevo dictamen del Tribunal Supremo estatal, *aunque el término para reconsiderar en el foro federal haya expirado* ("although the time for *rehearing* may have expired"). *Braniff Airways, Inc. v. Curtiss-Wright Corporation*, 424 F.2d 427 (2do Cir.), *cert.* denegado, 400 U.S. 829 (1970).

Otro tribunal de circuito ha expresado esta norma de la manera siguiente:

> ... [A] federal court ... is bound to follow the law as decided by the highest court of the state *even if it has changed during the pendency of* the federal action. (Énfasis suplido.) *Air Products & Chemicals v. Hartford Acc. & Indem. Co.*, 25 F.3d 177, 181 (1994).

El propio primer circuito ha resuelto recientemente que:

... When the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court, the latter ruling must give way. *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 429 esc. 12 (1er Cir. 1996).

Finalmente, un cuarto tribunal de circuito ha resuelto que es válido enmendar una sentencia del tribunal de distrito federal, si el Tribunal Supremo estatal ha emitido una nueva decisión dominante mientras el caso estaba pendiente ante dicho tribunal de distrito. *Zierke v. Agri-Systems*, 992 F.2d 276 (10mo Cir. 1993).

Es por todo lo anterior que en *Wright, Miller and Cooper*, supra, Vol. 19, Sec. 4507, pág. 20 (1996), estos profesores señalan que:

... If during the pendency of an action in a federal court state law changes or a previously open or ambiguous question of state law is resolved or clarified, *the federal court must* take this into account and reverse or *revise its earlier determination of state law accordingly.* (Escolio omitido y énfasis suplido.)

Era esto precisamente lo que el foro federal tenía que hacer en el caso de autos, pero no lo hizo. En tales circunstancias, como el foro federal inválidamente no consideró nuestra decisión en *Soc. de Gananciales v. El Vocero de P.R.*, supra, no debemos darle efecto de cosa juzgada a su dictamen, que se emitió erróneamente y en perjuicio de los derechos de los parientes de Bonafont.

## V

En el caso de autos existe aún otra razón fundamental por la cual no podía dársele efecto de cosa juzgada al dictamen federal: *el Tribunal de Distrito federal carecía de jurisdicción para entender en éste.* Nótese que ese foro intervino en el caso ante nos en virtud del mecanismo de *traslado.* El pleito se había iniciado en el Tribunal Superior de Puerto Rico, ante el cual *sólo se habían instado causas*

*de acción bajo las leyes del Estado Libre Asociado de Puerto Rico.* El pleito incoado originalmente por los demandantes no planteaba cuestión federal alguna. Fueron los demandados los que solicitaron el traslado del caso al foro federal. Alegaron que aplicaban a éste determinadas disposiciones de ley federal. Es decir, fueron los demandados quienes, para *defenderse de las acciones incoadas contra ellos bajo la ley estatal,* invocaron la supuesta aplicación de una ley federal. En tales circunstancias, *no procedía el traslado.* Es norma reiterada y fundamental de la jurisdicción federal, en materia de cuestión federal, que tal cuestión debe surgir de las alegaciones *en la demanda original.* La jurisdicción federal no puede basarse en las *defensas* alegadas o alegables por el demandado. *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237 (1952); *Skelly Oil Co. v. Phillips Co.,* 339 U.S. 667 (1950). Ello es particularmente cierto respecto a la jurisdicción del tribunal de distrito federal en casos de traslado. *Franchise Tax Bd. v. Laborers Vacation Trust,* 463 U.S. 1 (1983); *Gully v. First Nat. Bank,* 299 U.S. 109 (1936); *Tennessee v. Union and Planters' Bank,* 152 U.S. 454 (1894). Véase *Wright, Miller and Cooper,* supra, Vol. 14A, Secs. 3721 y 3722 (1985).

Como se sabe, la jurisdicción de los tribunales federales en casos de traslado se considera anómala.[3] Tampoco es una jurisdicción favorecida. Por eso, bien señalan Wright, Miller y Cooper cuando dicen que "the trend of [judicial] decisions is to restrict and limit the removal jurisdiction of the federal courts".[4] Asimismo, el Tribunal Supremo de Estados Unidos ha resuelto expresamente que se trata de un tipo de jurisdicción federal que debe interpretarse *restrictivamente, Shamrock Oil Corp. v. Sheets,* 313 U.S. 100 (1941). También se ha resuelto que, en casos de dudas sobre si un tribunal federal tiene jurisdicción sobre algún asunto que se le ha trasladado, la duda debe resolverse *en*

_____

[3] *Wright, Miller and Cooper,* supra, Vol. 14A, pág. 186 (1985).

[4] Íd., pág. 214.

*contra* de asumir jurisdicción sobre dicho asunto. *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689 (5to Cir. 1995); *Laughlin v. Kmart Corp.*, 50 F.3d 871 (10mo Cir. 1995); *Roe v. O'Donohue*, 38 F.3d 298 (7mo Cir. 1994); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908 (7mo Cir. 1993). Todo lo anterior dimana del hecho de que el traslado presupone una irruptiva intervención federal con un procedimiento legítimo estatal, para desposeer al foro judicial estatal de algún caso sobre el cual ya éste había asumido jurisdicción. Por eso, en la jurisprudencia federal se ha advertido reiteradamente que los tribunales federales deben examinar rigurosa y escrupulosamente si debe asumir jurisdicción en casos de traslado, "to protect states' judicial power" (*Mathews v. County of Fremont, Wyo.*, 826 F. Supp. 1315 (D. Wyo. 1993)); "to protect the states from infringement by the federal government" (*Zbranek v. Hofheinz*, 727 F. Supp. 324, 326 (E.D. Tex. 1989)), y "to minimize encroachment by the federal courts upon the sovereignty of the state courts" (*Water's Edge Habitat, Inc. v. Pulipati*, 837 F. Supp. 501, 505 (E.D. N.Y. 1993)).

En el caso ante nos, el tribunal federal resolvió que las disposiciones federales invocadas por la parte demandada *no eran aplicables.* Conforme a la propia doctrina jurisdiccional federal, su dictamen debió haber ido más lejos. El foro federal tenía la obligación, antes que nada, de examinar si al momento del traslado existía jurisdicción sobre los asuntos planteados en la demanda. Es un principio elemental de derecho federal que los tribunales federales tienen el *deber* de dilucidar si tienen jurisdicción sobre los asuntos que se les plantean antes de entrar a decidirlos. *Mitchell v. Maurer*, 293 U.S. 237 (1934); *In re Prairie Island Dakota Sioux*, 21 F.3d 302 (8vo Cir. 1994); *Ceres Gulf v. Cooper*, 957 F.2d 1199 (5to Cir. 1992); *Von Dunser v. Aronoff*, 915 F.2d 1071 (6to Cir. 1990); *Woodke v. Dahm*, 873 F. Supp. 179 (N.D. Iowa 1995); *Rhode v. City of West Lafayette, Ind.*, 850 F. Supp. 753 (N.D. Ind. 1993); *Yasuda Fire*

& *Marine Ins. v. Continental Cas. Co.*, 840 F. Supp. 578 (N.D. Ill. 1993); *Norwood v. Slammons*, 788 F. Supp. 1020 (W.D. Ark. 1991); *Ticor Title Ins. Co. v. F.T.C.*, 625 F. Supp. 747 (D. D.C. 1986).

En el caso de autos, por razones que desconocemos, el tribunal federal no examinó a cabalidad si tenía jurisdicción *sobre el traslado* en sí. Si lo hubiera hecho, no tenemos dudas de que hubiese resuelto que el traslado no procedía. Seguramente hubiese decidido como de ordinario se hace en la jurisdicción federal en casos como el de autos:

> ... Given the fact that the removal statute is to be strictly construed, ... the balance lies in favor of curtailing the access to federal courts of controversies which do not have an independent basis for federal jurisdiction. (Citas omitidas.) *Luebbe v. Presbyterian Hosp. in City of N.Y., Etc.*, 526 F.Supp. 1162, 1165 (S.D.N.Y.1981).

Como de la demanda que se presentó originalmente ante el foro de instancia de Puerto Rico no surgía cuestión federal alguna, dicha acción no era trasladable. El foro federal no tenía, pues, jurisdicción en este caso. Por ello, no podía asumir jurisdicción suplementaria sobre las causas de acción estatales. Estaba obligado a devolver la totalidad del caso al foro estatal.

Más aun, en este caso no sólo no existía al solicitarse el traslado una cuestión federal que propiamente le diese al foro federal jurisdicción sobre el caso, sino que tampoco había ante ese foro tal cuestión federal *al momento de dictar sentencia.* De hecho, el propio Tribunal de Distrito federal así lo reconoció en su dictamen en el caso de autos, cuando indicó que:

> Since the claim against the Union has been dismissed, and it was the only reason for federal jurisdiction, then the remaining claims should be remanded to the state court ....
> In this case, the basis for original jurisdiction no longer exists ... we find it proper to remand the remaining issues to the state court.

Lo más inexplicable de la decisión federal en este caso es precisamente que el foro federal devolvió a nuestros tribunales las dos causas de acción estatales de Bonafont porque entendió, al momento de dictar sentencia, que "the basis for federal subject matter jurisdiction is lost", pero aun así adjudicó y denegó entonces las causas de acción de los parientes de Bonafont. *Si no había una base jurisdiccional adecuada para adjudicar unas causas de acción de derecho puertorriqueño, ¿porqué la había para las otras?*

Es menester resaltar que este Tribunal invariablemente ha negado efecto de cosa juzgada a las propias decisiones de los foros de Puerto Rico cuando éstas han sido emitidas sin jurisdicción. No se trata, pues, de una normativa nuestra que aplique sólo en casos de decisiones federales. Por el contrario, la hemos puesto en vigor la mar de veces, precisamente, cuando nuestros propios tribunales o agencias administrativas han actuado carentes de jurisdicción. *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 D.P.R. 171 (1992); *Vázquez v. A.R.P.E.*, supra; *J.R.T. v. Hosp. de la Concepción*, 114 D.P.R. 372 (1983); *Tartak v. Tribl. de Distrito*, supra; *Sucrs. de Huertas González v. Díaz*, 72 D.P.R. 537 (1951); *Muñoz v. Pardo*, 68 D.P.R. 612 (1948).

También debe enfatizarse que en la propia jurisdicción federal, la doctrina federal de cosa juzgada autoriza que no se le reconozcan efectos en los tribunales federales a decisiones estatales o federales emitidas sin jurisdicción. *Wolf v. Gruntal & Co., Inc.*, 45 F.3d 524 (1er Cir. 1995); *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9no Cir. 1992); *Cullen v. Margiotta*, 811 F.2d 698 (2do Cir. 1987); *Lupo v. Voinovich*, 858 F. Supp. 699 (S.D. Ohio 1994). Aun en la propia doctrina federal de *res judicata*, no se le da efecto de cosa juzgada a un dictamen judicial emitido por un tribunal federal carente de jurisdicción si —como en el caso de autos— ese tribunal no examinó la referida cuestión jurisdiccional y ésta no fue adjudicada y litigada. *Underwriters Assur. Co. v. N.C. Guaranty Assn.*, 455 U.S. 691 (1982);

*Durfee v. Duke*, 375 U.S. 106 (1963); *U.S. Ex Rel. Robinson Rancheria v. Borneo, Inc.*, 971 F.2d 244 (9no Cir. 1992); *Sun-Tek Industries v. Kennedy Sky-Lites*, 779 F. Supp. 589 (M.D. Fla. 1991). Incluso se ha resuelto que un tribunal federal no está obligado a darle entera fe y crédito (*full faith and credit*) a una sentencia de un tribunal estatal si dicho foro no tenía jurisdicción sobre el asunto litigado ante él. *In the Matter of Brady v. City of Brady*, 936 F.2d 212 (5to Cir.), *cert.* denegado, 502 U.S. 1013 (1991).

Debe recordarse, además, que como los tribunales federales son foros de jurisdicción *limitada*, el defecto de falta de jurisdicción sobre la materia es particularmente grave cuando ocurre en ellos. Es por esta razón que dichos tribunales nunca pueden adquirir jurisdicción por la mera anuencia o silencio de las partes.(⁵) Es por ello también que el defecto de falta de jurisdicción puede ser presentado *en cualquier momento* ante los foros federales.(⁶) Se trata, pues, de un defecto esencial que va a la raíz misma de la facultad del tribunal para actuar. Por eso se ha resuelto que "any 'decision' by a court lacking subject matter jurisdiction is a nullity, *void ab initio*". *Alabama Hospital Ass'n v. United States*, 656 F.2d 606, 610 (Ct. Cl. 1981), *cert.* denegado, 456 U.S. 943 (1982). Véanse, también: *In re Novak*, 932 F.2d 1397, 1401 (11mo Cir. 1991); *Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 568 (5to Cir. 1991).

Tomando en cuenta todo lo anterior, no podemos aceptar

---

(⁵) Como bien señalan los profesores Wright, Miller y Cooper,

"...parties cannot confer on a federal court jurisdiction that has not been vested in that court by the Constitution and Congress. This means that the parties cannot waive lack of jurisdiction by express consent, or by conduct, or even by estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims or tactical concerns of the litigants." (Escolios omitidos.) *Wright, Miller and Cooper*, supra, Vol. 13, Sec. 3522, págs. 66–68 (1984).

(⁶) *American Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951); *Sullivan v. Lemoncello*, 36 F.3d 676 (7mo Cir. 1994); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628 (6to Cir. 1992); *Hudson v. Smith*, 618 F.2d 642 (10mo Cir. 1980); *Woodward v. D.H. Overmyer Co.*, 428 F.2d 880 (2do Cir. 1970); *Preston v. CIGNA Property and Cas. Ins. Co.*, 785 F. Supp. 1466 (N.D. Ga. 1992).

el planteamiento de la recurrida de que como los recurrentes no apelaron el dictamen federal en cuestión, ello le impide a este Tribunal negarle efecto de cosa juzgada a la referida decisión judicial, aun cuando fue emitida sin jurisdicción. Nuestra doctrina de cosa juzgada claramente preceptúa que un dictamen emitido sin jurisdicción es absolutamente nulo y que tal dictamen nada significa en cuanto a los hechos que se pretendieron adjudicar mediante éste. *Vázquez v. A.R.P.E.*, supra; *Rodríguez v. Registrador*, 75 D.P.R. 712, 718 (1953); *Tartak v. Tribl. de Distrito*, supra. Por ello, en nuestra doctrina de cosa juzgada, si el dictamen judicial se dictó sin jurisdicción, éste no tiene efecto alguno, *independientemente de que se haya procurado su revisión o no.*

Además, debe considerarse también que, con arreglo al referido planteamiento de la recurrida, la parte demandante en este caso se hubiese visto expuesta a un indeseable fraccionamiento de su pleito. Hubiese tenido que dilucidar las reclamaciones del propio Bonafont ante los tribunales de Puerto Rico, ya que éstas habían sido devueltas a nuestro foro (*remanded*), a la vez que apelaba dentro del sistema judicial federal la desestimación de las reclamaciones de los parientes de Bonafont. Esto hubiese constituido un serio gravamen sobre la parte demandante que se encontraba presuntamente en un estado de relativa *indigencia*, precisamente por el despido de Bonafont de su empleo por la recurrida. Tal fraccionamiento de un pleito, con los costos, los riesgos y las dilaciones que causa, no es favorecido procesalmente, como bien lo ha explicado el juez y profesor Weinfeld en su medular decisión en *Twentieth Century-Fox Film Corporation v. Taylor*, 239 F. Supp. 913 (S.D. N.Y. 1965). Véase, también, *Díaz Maldonado v. Lacot*, supra.

# VI

A tenor de los múltiples fundamentos anteriormente expuestos, lo que claramente procedía en este caso era revocar la resolución emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional VI, de 20 de septiembre de 1995 y permitir a los parientes de Bonafont continuar con su propia causa de acción. Como la mayoría sigue otro curso de acción, que entendemos injusto y en menoscabo de la integridad de nuestro propio derecho y la función y dignidad de este Foro, disiento.

